**Corazon Labao FERRER, An Heir and Assignee of Arturo Labao, Appellant,**

v.

**Noemi GUEVARA, Appellee.**

No. 08–04–00200–CV.

Court of Appeals of Texas, El Paso.

Dec. 1, 2005.

Morris Tabak, Houston, for appellant.

Luis Alberto Fabrega, Houston, for appellee.

Before BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

DAVID WELLINGTON CHEW, Justice.

Corazon Ferrer Labao appeals from a Judgment Notwithstanding the Verdict ("JNOV") in favor of Appellee Noemi Guevara. Appellant contends the trial court erred in granting the JNOV. We agree and reverse and remand.

About 9 p.m. on October 17, 2002, Pacifico Ferrer and his father-in-law, Arturo Labao, were driving north on Highway 6 approaching the Timbercreek intersection. Appellee was driving south on Highway 6 and turned left onto Timbercreek. Her car was hit by Mr. Ferrer. Appellee conceded that she did not yield the right of way, but insisted she had looked and did not see any oncoming traffic. Mr. Ferrer and Mr. Labao were both injured in the collision and taken to a hospital by ambulance.

Mr. Labao had surgery the night of the accident. He had to have a second surgery. After the second surgery, his kidney failed and he was placed on dialysis. Mr. Labao remained in ICU for three months. Mr. Labao had a neck brace and tracheostomy. While in the hospital, Mr. Labao was unable to communicate and cried. Appellant testified that her father was mostly frustrated because his daughter had to help him change his diaper. Mr. Labao told Appellant that he was tired of the pain and cried, "I just want to go."

Prior to the accident, Mr. Labao had chronic atrial fibrillation for five to seven years and high blood pressure. Mr. Labao saw his cardiologist two weeks prior to the accident, and his doctor indicated everything was fine. Appellant stated that her father did not have internal bleeding, a tracheostomy tube, or kidney failure prior to the accident. Before the accident, Mr. Labao ran his business, a washateria, by himself and worked daily. Among the services Mr. Labao provided was a wash and fold, which consisted of weighing the clothing, washing, drying, folding, and wrapping the clothing. Mr. Labao also sold items in the washateria and repaired the machines. In his spare time, Mr. Labao would lift weights and read history books and the dictionary so he could challenge his grandchildren to competitions. Mr. Labao died on May 29, 2003.

Among Mr. Labao's medical bills entered into evidence was a bill from the Cy-Fair Volunteer Fire Dept totaling $398.53 for ambulance service on October 17, 2002. The second bill from Memorial Hermann Health Care System totaled $980,285.43 for hospitalization from October 18, 2002

until February 4, 2003. Another bill from Memorial Hermann Hospital System and Continuing Care Corporation totaled $37,759.25 for services from February 4, 2003 until February 19, 2003. A fourth bill from Spring Branch Medical Center totaled $88,196.09 for services from March 6, 2003 until March 19, 2003. The final bill from Merc Medical Supply Company totaled $2,526.12 for supplies needed while Mr. Labao was at home and is dated December 15, 2003. All of the bills were incurred after the car accident.

At the close of the plaintiffs' case, Appellee moved for a directed verdict on two issued arguing: (1) Appellant failed to prove she had standing under the survival statute to bring the suit; and (2) Appellant failed to offer legally or factually sufficient evidence of causation of Mr. Labao's past medical treatment, expenses, and damages. The trial court judge denied the motion for a directed verdict. During the charge conference, Appellee objected to the admission of Mr. Labao's medical bills for lack of causation because Appellant failed to prove the medical conditions and resulting expenses were caused by the accident. On February 5, 2004, the jury returned a verdict in favor of the plaintiffs. The jury awarded Mr. Ferrer $4,576.04 for past medical expenses, $500 for pain and suffering, and $500 for mental anguish. Appellant was awarded $1,109,169.42 for her father's medical expenses and $125,000 for her father's pain and mental anguish. Defendant filed a motion for a JNOV on February 13, 2004 arguing Appellant did not offer testimony or evidence, within a reasonable degree of medical probability that the $1,109,169.42 in past medical expenses were caused by the accident. In the motion for the JNOV, Appellee conceded that there was evidence of pain and suffering, but argued that because the medical conditions had not been properly linked to the accident, the judge should also disregard the jury's award of $125,000 in pain and mental anguish. The judge upheld the jury's award as to Mr. Ferrer, but entered a JNOV as to Mr. Labao's past medical expenses and pain and mental anguish awards finding they were not supported by legally and factually sufficient evidence.

We first address Appellee's contention that Appellant did not have standing to bring suit under the survival statute. Specifically, she argues that Appellant did not have standing to bring suit under the survival statute as an assignee or as an heir.

■ Standing is implicit in the concept of subject matter jurisdiction, and therefore, it is never presumed and cannot be waived. *Texas Ass'n of Business v. Tex. Air Control Bd.,* 852 S.W.2d 440, 443–44 (Tex.1993).

*As an Assignee*

■ The effective date of an assignment is the day it is signed. *See Luker v. Arnold,* 843 S.W.2d 108, 120 (Tex.App.-Fort Worth 1992, no pet.). In most cases, a cause of action accrues when a wrongful act causes an injury. *Childs v. Haussecker,* 974 S.W.2d 31, 36 (Tex.1998). At common law, an individual's action for personal injuries did not survive his death. *Russell v. Ingersoll–Rand Co.,* 841 S.W.2d 343, 344 (Tex.1992). On the premise that assignability depended on survivability, the passage of the Texas Survivor Statute meant that personal injury claims became assignable. *PPG Industries, Inc. v. JMB/Houston Centers Partners Ltd. Partnership,* 146 S.W.3d 79, 106 (Tex.2004). Personal injury claims are generally assignable. *Beech Aircraft Corp. v. Jinkins,* 739 S.W.2d 19, 22 (Tex.1987). However, there are four exceptions: (1) legal malpractice claims cannot be assigned; (2) plaintiffs cannot assign to the settling defendants to

a lawsuit a portion of their claim against the non-settling defendants, also known as Mary Carter agreements; (3) a tortfeasor cannot take an assignment of a plaintiff's claim as part of a settlement agreement with the plaintiff and prosecute that claim against a joint tortfeasor; and (4) interests in an estate cannot be assigned. *State Farm Fire and Cas. Co. v. Gandy,* 925 S.W.2d 696, 707–11 (Tex.1996).

### Under the Survival Statute

A cause of action for personal injury to the health, reputation, or person of an injured person does not abate because of the death of the injured person or because of the death of the person liable. TEX.CIV.PRAC. & REM.CODE ANN. § 71.021(a)(Vernon 1997). A personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person. TEX.CIV.PRAC. & REM. CODE ANN. § 71.021(b). The survival statute does not create a new cause of action, it allows a cause of action to continue after the death of the injured party. *Parrott v. Caskey,* 873 S.W.2d 142, 150 (Tex.App.-Beaumont 1994, no pet.). When a person dies without a will, all of the estate vests immediately in his heirs at law, subject to payment of the debts of the estate. TEX. PROB.CODE ANN. § 37 (Vernon 2003). Heirs can maintain a survival suit during the four-year period for instituting administration hearings provided by the law if the heirs can allege and prove that there is no administration pending and none is necessary. *Shepherd v. Ledford,* 962 S.W.2d 28, 31–32 (Tex.1998). The heirs of the estate may decide amongst themselves how to distribute the estate and pay for the expenses of the estate. *Id.* at 32.

### Evidence

Appellee argues that Appellant does not have standing as an assignee under the survival statute. Although Appellant is not asserting she has standing as an assignee under the survival statute, she is asserting standing in two distinct ways. First, Appellant contends she has standing as an assignee of Mr. Labao's personal injury claims. Second, she contends she has standing as an heir under the survival statute. We agree.

On April 19, 2003, Mr. Labao assigned all right, title, and interest in his claims, causes of action, and requests for damages, for the accident he was involved in on October 17, 2002, to his daughter, Appellant. The assignment is dated April 19, 2003. Mr. Labao died on May 29, 2003. An assignment of a personal injury claim is valid unless it meets one of the four exceptions. *See Gandy,* 925 S.W.2d at 707–11. Mr. Labao's personal injury claim is for serious bodily injury, physical and mental pain and anguish, and reasonable and necessary medical expenses as a result of Appellee's negligence. Because Mr. Labao's claim is not one of the four exceptions, the assignment of his claim to Appellant is valid. Appellee contends that the assignment would only give Appellant those rights that Mr. Labao had prior to his death. We agree. Appellant seeks compensation for expenses related to her father's injuries from the accident, not wrongful death compensation or other form of compensation for expenses incurred for or after her father's death.

Because the assignment was valid, as of April 19, 2003, Appellant had all right, title, and interest in the claim for the personal injury cause stemming from the accident. Mr. Labao no longer had any interest in the claim, so when he died, the claim did not die with him as Appellee contends, it remained with Appellant. Therefore, Appellant had standing to continue the suit initiated by her father be-

cause she gained right to the cause of action prior to his death.

Appellee further claims that Appellant does not have standing because she did not produce evidence at trial to prove she had standing under the survival statute. Again, Appellant does not claim standing under the survival statute as an assignee, she only claims standing under the survival statute as an heir.

■ As Mr. Labao's daughter, Appellant is his heir. She is not asserting a claim as a personal representative of the estate, as Appellee claims, rather Appellant is asserting the claim as an heir under the survival statute. Because she is not suing as a personal representative, she did not need to offer proof that she was the personal representative of her father's estate. She only needed to provide proof that she was Mr. Labao's heir, and she did that through a sworn affidavit, which was attached to her response to the Appellee's motion to dismiss.

In order to maintain the personal injury suit as an heir, the suit must be maintained during the four-year period for administration of the estate and the heirs must plead and prove that no administration is pending or needed. Appellant did maintain the suit during the four-year period from the date of death for administration of the estate. *See Frazier v. Wynn,* 472 S.W.2d 750, 752 (Tex.1971). Mr. Labao died on May 29, 2003, so the four-year period does not end until May 29, 2007. Appellee contends Appellant is barred from asserting a survival cause of action because the statute of limitations to assert a personal injury claim has run. This suit, whether assigned or continued under the Survival Statute, was initiated in December 2002. Therefore, the statute had not run when the claim was first asserted.

Appellant plead and proved that no administration hearing was pending or needed. Appellant pled in her sixth amended petition that no administration of her father's estate was needed or pending. She proved this pleading through a sworn affidavit dated December 5, 2003. The uncontroverted affidavit is sufficient proof that no administration was pending or needed. Appellee contends Appellant did not indicate the presence of a will, other heirs, a family settlement, or debt in her father's name. Contrary to Appellee's assertion, Appellant did provide proof of all of these. In the sworn affidavit referred to above, Appellant indicated the only heirs were Appellant, her mother, and Appellant's siblings. She further indicated her father died without a will, with no debts, and only personal effects. The disposition of Mr. Labao's personal effects, including clothing, a ring, and a watch, was discussed amongst the heirs. They decided to give the ring and some clothes to one of the male heirs, the watch to another male heir, and the remaining clothing to charity. Appellant properly pled and proved she had standing as an heir under the survival statute.

Appellant had standing as an assignee under the original personal injury claim initiated by her father. She also had standing as an heir under the survival statute.

## Judgment Notwithstanding the Verdict

In Appellant's sole issue on appeal, she claims the trial court erred in granting the JNOV.

### Standard of Review

To affirm the trial court's grant of a JNOV, the reviewing court must find that there is no evidence to support one or more of the jury's findings necessary for liability. *Wal–Mart Stores, Inc. v. Miller,* 102 S.W.3d 706, 709 (Tex.2003). When

reviewing a no evidence point, we view the evidence in the light that tends to support the finding of the disputed fact and disregard all evidence and inferences to the contrary. *Id.* If there is more than a scintilla of evidence to support the jury's findings, the JNOV must be overturned and the jury's verdict upheld. *Id.* More than a scintilla of evidence exists if the evidence provides some reasonable basis for reasonable minds to differ about a fact's existence. *Lee Lewis Const., Inc. v. Harrison,* 70 S.W.3d 778, 782–83 (Tex. 2001).

### Damages

A plaintiff must establish two causal nexuses in order to be entitled to recovery: (1) a causal nexus between the defendant's conduct and the event sued upon; and (2) a causal nexus between the event sued upon and the plaintiff's injuries. *Morgan v. Compugraphic Corp.,* 675 S.W.2d 729, 731 (Tex.1984); *Walker v. Ricks,* 101 S.W.3d 740, 747 (Tex.App.-Corpus Christi 2003, no pet.). The causal nexus between the event sued upon and the plaintiff's injuries is referable strictly to the damages portion of the plaintiff's cause of action. *Walker,* 101 S.W.3d at 747. A jury may decide the required causal nexus between the event sued upon and the plaintiff's injuries when: (1) general experience and common sense will enable a layperson fairly to determine the causal nexus; (2) expert testimony establishes a traceable chain of causation from injuries back to the event; or (3) a probable cause nexus is shown by expert testimony. *Weidner v. Sanchez,* 14 S.W.3d 353, 370 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Generally, lay testimony establishing a sequence of events which provides a strong, logically traceable connection between the event and the condition is sufficient proof of causation. *Morgan,* 675 S.W.2d at 733.

In order to receive mental anguish damages there must be:

'[D]irect evidence of the nature, duration, and severity of [plaintiffs'] mental anguish establishing a substantial disruption in the plaintiff's daily routine,' or other evidence of a high degree of mental pain and distress' that is more than a mere worry, anxiety, vexation, embarrassment, or anger.' Compensable mental anguish includes a mental sensation of pain resulting from 'such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair or public humiliation or a combination of any of these.' Not only must there be evidence of the existence of compensable mental anguish, there must also be some evidence to justify the amount awarded.... Juries cannot simply pick a number and put it in the blank. They must find an amount that, in the standard language of the jury charge, 'would fairly and reasonably compensate for the loss.' [Citations omitted].

*Wyler Indus. Works, Inc. v. Garcia,* 999 S.W.2d 494, 506–07 (Tex.App.-El Paso 1999, no pet.).

Section 18.001(b) of the Texas Civil Practice and Remedies Code touches upon three elements of proof: (1) the amount of the charges; (2) the reasonableness of the charges; and (3) the necessity of the charges. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 18.001(b)(Vernon 1997); *Beauchamp v. Hambrick,* 901 S.W.2d 747, 748 (Tex.App.-Eastland 1995, no pet.). Section 18.001(b) further provides: "Unless a controverting affidavit is filed as provided by this section, an affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is sufficient evidence to support

a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary." TEX.CIV.PRAC. & REM.CODE ANN. § 18.001(b). However, evidence presented in accordance with the statute does not conclusively establish the amount of damages nor does it establish a causal nexus between the accident and the medical expenses. *Walker*, 101 S.W.3d at 748.

### Evidence

 Viewing the evidence in the light favorable to the jury's verdict, there is a scintilla of evidence to prove the causal nexus between the accident and Mr. Labao's injuries. There is also more than a scintilla of evidence to prove the damages for mental pain and anguish and past medical expenses.

The record shows that prior to the accident, Mr. Labao was in generally good health. Mr. Labao saw a cardiologist for an annual checkup one week before the accident, and the doctor did not find any problems. Mr. Labao ran a business by himself on a daily basis and lifted weights in his spare time. His only medical conditions prior to the accident were high blood pressure and chronic atrial fibrillation. On the night of the accident, Mr. Labao had surgery. He did not recover well, and he had to have a second surgery performed. Mr. Labao was treated for internal bleeding, kidney failure, and had a tracheostomy tube inserted. Mr. Labao was in and out of the ICU for several months. He remained in the hospital from the night of the accident, October 17, 2002, until February 4, 2003. He was in a continuing care hospital from February 4 until February 19, 2003. He was back in the hospital from March 6 to March 19, 2003. Mr. Labao died on May 29, 2003.

 To properly prove causation, Appellee argues Appellant had to produce expert testimony. We disagree. As discussed above, lay testimony or expert testimony is sufficient to prove causation. Courts have held that when considering the causal nexus concerning damages, lay testimony is sufficient to prove a causal nexus, so expert testimony is not necessarily needed. *See Morgan*, 675 S.W.2d at 733. Appellee argues that medical records alone are insufficient as a matter of law to establish medical causation in cases of this nature. Though this is true, there is more than just medical records in this case. There was testimony as to Mr. Labao's daily activities and medical ailments prior to the accident, as well as evidence concerning the injuries Mr. Labao's sustained because of the accident. In this case, the trial court upheld the jury's findings as to Appellee's negligence, so we need only consider the causal nexus concerning damages.

 Appellant testified that Mr. Labao did not suffer from any of his post-accident injuries prior to the accident. There was no indication that Mr. Labao was in bad health, in fact, it seems the opposite was true because he ran a business by himself on a daily basis, and he lifted weights in his spare time. After the accident, Mr. Labao was immediately hospitalized and spent several months in and out of ICU. He received continuous care from the night of the accident until mid-February 2003. He was out of the hospital for several weeks, but he was back in the hospital from March 6 to March 19. The final bill presented is for home services provided to Mr. Labao from April 5 to May 7. No great length of time passed between the accident and Mr. Labao's death during which he was not in the hospital or receiving care at home. Mr. Labao was only allowed to go home on the condition that his daughter purchase equipment to properly care for him. We conclude the lay

testimony was sufficient in this case because it established a sequence of events which provided a strong, logically traceable connection between the event and the condition. Since general experience and common sense will enable a layman to determine, with reasonable probability, there was some evidence of the causal relationship between the event and the condition. *See Morgan*, 675 S.W.2d at 733 [1].

■ Having determined there is sufficient evidence for reasonable minds to differ as to the causal nexus, we now consider the mental pain and anguish damages and past medical expenses specifically. There is sufficient evidence for reasonable minds to differ as to whether or not Appellant presented enough evidence to prove damages for mental pain and anguish. Appellant provided direct evidence of the nature, duration, and severity of her father's mental anguish. Testimony from Appellant indicates Mr. Labao was a relatively independent man prior to the accident. He ran a business daily and lifted weights in his spare time. After the accident, Mr. Labao was in and out of ICU for several months. The evidence indicates he was hospitalized from the night of the accident until mid-February. There is no indication that Mr. Labao ever returned to work, in fact the evidence indicates the opposite. Mr. Labao suffered a complete change in his daily routine. He did not run the business anymore, and he spent several months in the hospital. Appellant testified that Mr. Labao had difficulty communicating, and at times Mr. Labao was unable to communicate at all. Appellant stated Mr. Labao cried while he was in the hospital, and at one point he told Appellant that he was tired of the pain and said, "I just want to go." Appellant had to help her father change his diaper. A once independent man was forced to receive help from his daughter. We find that there is enough evidence for reasonable minds to differ as to the evidence produced to prove Mr. Labao's mental pain and anguish damages.

■ There is also enough evidence for reasonable minds to differ about whether or not Appellant proved the amounts, reasonableness, and necessity of Mr. Labao's past medical expenses. When Appellant filed her notices of evidence, she included the various medical bills as well as affidavits stating the services were reasonable and necessary. Appellee did not produce any counter affidavits contesting the amount of the bills, nor did she file any affidavits contesting the reasonableness and necessity of the bills. Therefore, Appellant produced sufficient evidence to prove that Mr. Labao's medical bills were reasonable and necessary. Appellant argues Appellee waived any error with regard to the past medical expenses because she did not object and allowed the jury to see all of Mr. Labao's medical bills. We do not agree. Appellant proved the reasonableness and necessity of the expenses, but Appellant must also produce sufficient evidence to prove the amount of the bills and the causal nexus between the event and Mr. Labao's injuries. By not producing counter affidavits, Appellee waived any error as to the reasonableness and necessity of the charges, but not as to the causal

---

1. Appellee argues that Mr. Labao's age was a factor in the length of time he was in the hospital. It is long settled that a tortfeasor takes a plaintiff as he finds him or her. *In re Nance*, 143 S.W.3d 506, 512 (Tex.App.-Austin 2004, no pet.); *Blankenship v. Mirick*, 984 S.W.2d 771, 777 (Tex.App.-Waco 1999, no pet.); *Lang v. City of Nacogdoches*, 942 S.W.2d 752, 766 (Tex.App.-Tyler 1997, no pet.). Therefore, Mr. Labao's age should not be considered when determining if there was enough proof of the causal nexus between Appellee's negligence and Mr. Labao's condition.

nexus between the event and the condition. Having determined there was enough evidence to prove the causal nexus, the bills entered into evidence are sufficient to prove the amount of the past medical expenses.

Viewing the evidence in the light that favors the jury verdict, we believe that reasonable minds could differ when deciding if there is a sequence of events that provide a strong, logically traceable connection between the event and Mr. Labao's injuries. We also find that there is enough evidence for reasonable minds to differ as to the mental pain and anguish damages and past medical expenses. Thus, there is more than a scintilla of evidence to show that Mr. Labao's injuries were a result of the accident and the amount of damages were proper. Therefore, the trial court erred in granting the JNOV. We sustain Appellant's sole issue.

We reverse the trial court's judgment notwithstanding the verdict and remand the cause to the trial court to enter judgment based on the jury's verdict.