Noemi GUEVARA, Petitioner,

v.

Corazon Labao FERRER, an Heir
& Assignee of Arturo Labao,
Respondent.

No. 05–1100.

Supreme Court of Texas.

Argued Feb. 14, 2007.

Decided Aug. 31, 2007.

Robert M. Roach Jr., Cook & Roach, L.L.P., Austin, Robert B. Dubose, Alexander Dubose Jones & Townsend LLP, Houston, Sean Reed Cox, Baron & Budd P.C., Dallas, Luis Alberto Fabrega Jr., Fabrega Hood Raynes & Fass, LLP, Houston, Daniel S. Goldberg and Daniel

William Davis, Cook & Roach, L.L.P., Houston, TX, for Petitioner.

Morris Tabak, Dawn Fukuei Lin, Alan Scott Byers, Law Offices of Lin & Associates, and Jamal A. Asafi, Asafi Law Firm, Houston, TX, for Respondent.

Justice JOHNSON delivered the opinion of the Court.

■ This case presents the question of whether expert medical evidence is required to support a finding that an automobile accident caused medical expenses of over $1 million. We conclude that expert medical evidence is required to prove causation unless competent evidence supports a finding that the conditions in question, the causal relationship between the conditions and the accident, and the necessity of the particular medical treatments for the conditions are within the common knowledge and experience of laypersons. Because only lay evidence was offered to prove that the accident caused all the medical expenses and expert evidence was required to prove many of them, we reverse and remand to the court of appeals for further proceedings.

## I. Background

On October 17, 2002, eighty-six-year-old Arturo Labao was a passenger in a car being driven by his son-in-law, Pacifico Ferrer, when a car being driven by Noemi Guevara turned in front of them. The cars collided, and both Pacifico[1] and Arturo were injured and taken to a hospital emergency room by ambulance.

After Arturo died in May 2003, suit was filed by Pacifico and Corazon Labao Ferrer, Arturo's daughter and Pacifico's wife, as a result of the injuries Pacifico and Arturo suffered in the accident. The only testimony at trial regarding damages came

1. We refer to the parties by their first names to avoid confusion.

from Pacifico [2] and Corazon. Their testimony was to the effect that Arturo had a seatbelt on at the time of the accident and that after the accident Arturo was screaming, complaining about a stomachache and moaning. Arturo was hospitalized. Corazon testified without objection that he underwent abdominal surgery on the night of the accident, then had another surgery because the first was not healing properly. No medical records from the hospitalization were introduced and no medical testimony was introduced. Medical bills admitted into evidence show that Arturo was in the hospital's intensive care unit from October 18, 2002 until January 2, 2003, then remained in the hospital for another month. Following his discharge from the hospital in February 2003, Arturo spent approximately two more weeks in a continuing care facility. The only medical record introduced for the two-week admission was a note by a consulting physician which listed Arturo's chief complaint upon admission as shortness of breath. The doctor's "History of Present Illness" noted, among other matters, the automobile wreck in which Arturo "sustained multiple orthopedic injuries and has developed bacteremia and respiratory distress" and that he had a tracheotomy on November 13, 2002. The note also reflected that Arturo had a significant past medical history of "atrial fibrillation and hypertension as well as acute and chronic renal failure" and significant past surgical history for "ileal resection as well as cataract surgery." No dates were given as to the conditions noted in the history. On March 6, 2003, Arturo was admitted to another medical center for two weeks. The only medical records introduced for the March admission were the attending physician's "History and Physical" notes and a consultant's report. Those two records reflected that Arturo came to the emergency room because of "[c]ough and shortness of breath." He was having chills and low-grade fever and his condition was worsening. His past medical history was noted as "complicated" and included a "long history of hypertension and atrial fibrillation," "known history of hypertension, atherosclerotic heart disease, history of congestive heart failure," peripheral vascular disease, chronic venous insufficiency, degenerative joint disease, and the auto accident in October 2002 and subsequent medical treatment including an "exploratory laparotomy for internal bleed." The attending physician noted that, upon admission, Arturo was not having "any significant complaints except for pain in his left knee which he developed about two days ago. He has not been able to walk due to the pain."

Medical bills which were introduced included bills for the hospital and both care facility confinements and associated expenses for items such as drugs, laboratory procedures, respiratory services, physical therapy, renal dialysis, multiple anesthesia administrations, echo cardiograms, and "ancillary charges" of various kinds. The total expenses exceeded $1 million. Corazon testified that before the accident Arturo had atrial fibrillation and high blood pressure for several years but did not have medical treatment except for checkups and blood pressure medications.

At the close of evidence, Guevara moved for a directed verdict. Although she did not contend that the treatments Arturo received were unnecessary for treatment

**2.** Pacifico testified that the accident caused him to have slight pain in his neck and hand and he was "just kind of shook up." He was examined and x-rayed in the emergency room, then released. He had a follow-up x-ray examination and was treated by a chiropractor for a few weeks but was "fine" when he testified at trial. Neither Pacifico nor Guevara appealed from the judgment in Pacifico's favor.

of his conditions or that the charges were unreasonable in amount, she argued that there was no evidence the conditions treated were caused by the accident. Corazon argued that evidence of the sequence of treatments following the accident combined with lay testimony about the accident and Arturo's having no abdominal problems or requiring a ventilator prior to the accident was sufficient to establish a causal relationship. The motion for directed verdict was denied.

The jury found damages in the amount of over $1.1 million for Arturo's medical expenses and $125,000 for his pain and mental anguish. Guevara then moved for judgment notwithstanding the verdict based in part on the same causation arguments made in her motion for directed verdict. Corazon responded in the same vein as to the motion for directed verdict. The trial court granted Guevara's motion and entered a take-nothing judgment as to Arturo.

Corazon appealed. Citing *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729 (Tex. 1984), the court of appeals held that there was legally sufficient evidence of causation. 192 S.W.3d 39, 46. It noted Corazon's testimony that Arturo "did not suffer from any of his post-accident injuries prior to the accident," that he was not in bad health prior to the accident, and that "[n]o great length of time passed between the accident and [Arturo's] death during which he was not in the hospital or receiving care at home." *Id.* at 47. The court of appeals concluded that this testimony "established a sequence of events which provided a strong, logically traceable connection between the event and the condition" so that a layperson could "determine, with reasonable probability, there was some evidence of the causal relationship between the event and the condition." *Id.* at 47–48. The court of appeals reversed and remand-

ed for entry of judgment based on the jury's verdict.

Guevara asserts that the court of appeals' reliance on *Morgan* to support its *post hoc, ergo prompter hoc* reasoning ("after this, therefore because of this," BLACK'S LAW DICTIONARY 1186 (7th ed.1999)) demonstrates the need for *Morgan* to be reexamined. She urges us to overrule *Morgan* to the extent it is inconsistent with the rule that expert testimony of causation is required in cases involving complex medical conditions. *See Leitch v. Hornsby*, 935 S.W.2d 114, 119 (Tex.1996); *Lenger v. Physician's Gen. Hosp., Inc.*, 455 S.W.2d 703, 706 (Tex.1970).

## II. Standard of Review

■ When reviewing a court of appeals' judgment reversing the trial court's grant of judgment notwithstanding the verdict, we conduct a legal sufficiency analysis of the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex.2005). We review the evidence presented at trial in the light most favorable to the jury's verdict, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Id.* at 827.

## III. Causation Evidence

### A. General Rule

■ The general rule has long been that expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors. *See, e.g., Ins. Co. of N. Am. v. Myers*, 411 S.W.2d 710, 713 (Tex. 1966) (holding that an "inference that a pre-existing tumor was activated and the deadly effects of a malignancy accelerated by an injury" was a "question of science determinable only from the testimony of expert medical professionals"); *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex.1982)

(holding that "the diagnosis of skull fractures is not within the experience of the ordinary layman" and therefore required expert testimony); *Kaster v. Woodson,* 123 S.W.2d 981, 983 (Tex.Civ.App.-Austin 1938, writ ref'd) ("What is an infection and from whence did it come are matters determinable only by medical experts."). *Morgan* was not the first case to acknowledge an exception to the general rule whereby causation findings linking events and physical conditions could, under certain circumstances, be sufficiently supported by non-expert evidence. *See Lenger,* 455 S.W.2d at 706; *Parker v. Employers Mut. Liab. Ins. Co. of Wis.,* 440 S.W.2d 43, 46 (Tex. 1969) (noting that submission of causation issue to a jury is warranted when under the evidence (1) a layperson's general experience and common sense will enable the layperson to fairly determine the causal relationship between the event and the condition; (2) categorical scientific principles, usually proved by expert testimony, establish that the result in question is always directly traceable back to the event in question; or (3) a probable causal relationship is shown by expert testimony). In *Morgan,* a default judgment case, we said: "Proving that the event sued upon caused the plaintiff's alleged injuries is part and parcel of proving the amount of damages to which the plaintiff is entitled. The causal nexus between the event sued upon and the plaintiff's injuries must be shown by competent evidence." 675 S.W.2d at 732. We cited *Lenger* for the proposition that "[l]ay testimony is adequate to prove causation in those cases in which general experience and common sense will enable a layman to determine, with reasonable probability, the causal relationship between the event and the condition." *Id.* at 733. Without differentiating between the nature of the events or types of conditions in question we cited several cases for the proposition that

"[g]enerally, lay testimony establishing a sequence of events which provides a strong, logically traceable connection between the event and the condition is sufficient proof of causation." *Id.* We concluded that evidence of chemical fumes from a typesetting machine caused Morgan's medical symptoms was legally sufficient without expert medical evidence:

> [T]he evidence shows that Morgan had always been in good health prior to returning to work from her vacation. Upon returning to her job, she worked with her face two inches from a typesetting machine which, it is admitted by default, was leaking chemical fumes. Soon after resuming her employment, that is, soon after being exposed to the fumes emanating from the typesetting machine, Morgan experienced problems with "breathing and swelling and the like." After four or five days of being constantly exposed to these fumes during her working hours, Morgan developed symptoms such as watering of the eyes, blurred vision, headaches and swelling of the breathing passages. We believe this evidence establishes a sequence of events from which the trier of fact may properly infer, without the aid of expert medical testimony, that the release of chemical fumes from the typesetting machine caused Morgan to suffer injury.

*Id.*

Competent proof of the relationship between the event sued upon and the injuries or conditions complained of has always been required. In *Morgan,* we merely applied the rule to a particular set of facts.

## B. Non–Expert Evidence of Causation

In personal injury cases, trial evidence generally includes evidence of the pre-occurrence condition of the injured person, circumstances surrounding the occurrence,

and the course of the injured person's physical condition and progress after the occurrence. The record before us contains lay testimony about Arturo's pre-accident physical condition, his activities and other events leading up to the accident, the accident, an investigating police officer's report, and post-accident events including medical treatments. This type of evidence "establishing a sequence of events which provides a strong, logically traceable connection between the event and the condition" could suffice to support a causation finding between the automobile accident and basic physical conditions which (1) are within the common knowledge and experience of laypersons, (2) did not exist before the accident, (3) appeared after and close in time to the accident, and (4) are within the common knowledge and experience of laypersons, caused by automobile accidents. For example, if Arturo had been pulled from a damaged automobile with overt injuries such as broken bones or lacerations, and undisputed evidence which reasonable jurors could not disbelieve showed that he did not have such injuries before the accident, then the physical conditions and causal relationship between the accident and the conditions would ordinarily be within the general experience and common knowledge of laypersons. Thus, it would be within the general experience and common knowledge of laypersons that the accident caused Arturo to be transported to a medical care facility and to be cared for medically to some degree. To this extent, we do not understand *Guevara* to disagree with *Morgan*.

 Cases decided after *Morgan* have expounded upon the circumstances in which competent expert testimony is required to prove the nature of and causal connection between physical conditions and an occurrence. The holdings of such cases in many instances reflect advances in science and medicine. Even so, such cases reflect the basic premise affirmed in *Morgan*: competent evidence is required to prove the existence and nature of a condition and a causal relationship to the event sued on even though, in limited circumstances, the existence and nature of certain basic conditions, proof of a logical sequence of events, and temporal proximity between an occurrence and the conditions can be sufficient to support a jury finding of causation without expert evidence. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex.1995). *Daubert* and *Robinson* require trial judges to scrutinize evidence for reliability. *Robinson*, 923 S.W.2d at 554. Most federal courts[3] that have considered the issue after *Daubert* have concluded that temporal proximity alone does not meet standards of scientific reliability and does not, by itself, support an inference of medical causation. *See, e.g., McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1243 (11th Cir.2005) (concluding that a temporal relationship does not, by itself, establish causation, and rejecting "the false inference that a temporal relationship proves a causal relationship"); *Rolen v. Hansen Beverage Co.*, 193 Fed. Appx. 468, 473 (6th Cir.2006); *Porter v. Whitehall Labs.*, 9 F.3d 607, 611 (7th Cir. 1993); *see also Roche v. Lincoln Prop. Co.*, 278 F.Supp.2d 744, 764 (E.D.Va.2003) ("An opinion based primarily, if not solely, on temporal proximity does not meet *Daubert* standards."); *In re Breast Implant Litig.*, 11 F.Supp.2d 1217, 1238–39 (D.Colo.1998)

---

**3.** Considering federal precedent as to evidentiary matters is appropriate. *See Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 727 (Tex.1998) ("[T]here is much to be said for maintaining as much uniformity in state and federal evidence rules as possible.").

("[A] temporal relationship by itself, provides no evidence of causation.... The fact of a temporal relationship establishes nothing except a relationship in time. Proof of a temporal relationship merely suggests the possibility of a causal connection and does not assist Plaintiffs in proving medical causation."); *Schmaltz v. Norfolk & W. Ry.*, 878 F.Supp. 1119, 1122 (D.Ill.1995) ("It is well settled that a causation opinion based solely on a temporal relationship is not derived from the scientific method and is therefore insufficient to satisfy the requirements of [Rule] 702."). One federal court noted the importance of focusing on scientific reliability to ensure "that decisionmakers will not be misled by the *post hoc ergo propter hoc* fallacy—the fallacy of assuming that simply because a biological injury occurred after a spill, it must have been caused by the spill." *Ohio v. U.S. Dep't of the Interior*, 880 F.2d 432, 473 (D.C.Cir.1989). This is not to say that evidence of temporal proximity, that is, closeness in time, between an event and subsequently manifested physical conditions is irrelevant to the causation issue. Evidence of an event followed closely by manifestation of or treatment for conditions which did not appear before the event raises suspicion that the event at issue caused the conditions. But suspicion has not been and is not legally sufficient to support a finding of legal causation. When evidence is so weak as to do no more than create a surmise or suspicion of the matter to be proved, the evidence is "no more than a scintilla and, in legal effect, is no evidence." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex.2004). Nevertheless, when combined with other causation evidence, evidence that conditions exhibited themselves or were diagnosed shortly after an event may be probative in determining causation. *See, e.g., Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 265 (4th Cir.1999). In *Westber-*

*ry*, the plaintiff alleged that talc in his workplace caused him to suffer sinus problems. There was evidence that the plaintiff's symptoms worsened after exposure at work, lessened when his doctor experimented with keeping him away from work, and increased when he returned to work. *Id.* at 260. While this evidence was not sufficient to support a causal relationship finding, it could be considered in support of such a finding when combined with evidence that the plaintiff was exposed to high concentrations of airborne talc at work and there was no dispute that "exposure to high concentrations of airborne talc could cause irritation to mucous membranes." *Id.* at 264.

■ Undoubtedly, the causal connection between some events and conditions of a basic nature (and treatment for such conditions) are within a layperson's general experience and common sense. This conclusion accords with human experience, our prior cases, and the law in other states where courts have held that causation as to certain types of pain, bone fractures, and similar basic conditions following an automobile collision can be within the common experience of lay jurors. *See Burandt v. Clarke*, 274 Or. 521, 547 P.2d 89 (1976) ("As defendants concede, medical testimony of causation between collision and injury is not essential if there is an 'uncomplicated situation.' "); *see also Choi v. Anvil*, 32 P.3d 1, 4 (Alaska 2001); *Roling v. Daily*, 596 N.W.2d 72, 75 (Iowa 1999); *Walton v. Gallbraith*, 15 Mich.App. 490, 166 N.W.2d 605, 606 (1969). Thus, non-expert evidence alone is sufficient to support a finding of causation in limited circumstances where both the occurrence and conditions complained of are such that the general experience and common sense of laypersons are sufficient to evaluate the conditions and whether they were probably caused by the occurrence. *See Bur-*

*roughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995).

## C. Application

■ The jury awarded damages for Arturo's treatments which included, among other expenses, the cost of (1) at least two abdominal surgeries; (2) three separate confinements in health care facilities, one of which was for over three months; (3) a great variety and quantity of various pharmaceutical supplies, medicines, and drugs; (4) numerous varied laboratory procedures; (5) extensive treatments for respiratory failure and therapy; (6) physical therapy of various kinds; (7) treatments for kidney failure; and (8) a great assortment and quantity of "central supply" and miscellaneous medical charges. Corazon maintains that a legally sufficient causal link was established as to all the conditions and treatments for them even though no expert evidence provided such a link. We disagree.

The evidence does not specify the conditions for which Arturo was treated in the hospital except by medical history set out in records for the subsequent care facility admissions. Those histories do not purport to be diagnoses of Arturo's previously treated conditions nor to relate his conditions to the accident. Some of the conditions for which Arturo was treated could be speculated about by reviewing entries on the bills for medical care, but the bills do not specify the conditions treated. For example, the bills set out dates and charges for respiration therapy, but they give no condition for which the therapy was given, do not specify the type of therapy, or give any indication of who ordered the therapy or why. The bills generally name the medications given, but do not set out the condition treated by the medi-

cations or the intended effect of the medicines. Patients in hospitals are often treated for more than one condition brought on by causes independent of each other. *See Texarkana Mem'l Hosp., Inc. v. Murdock,* 946 S.W.2d 836, 840 (Tex. 1997). Absent expert proof of the conditions and their causes, judgment for the expense of treatment is not supported by legally sufficient evidence.

Arturo's medical course clearly was not smooth or simple. Affidavits proving up the medical bills are evidence that expenses were reasonable in amount and necessary for treatment of Arturo's conditions, but the bills are not evidence of what all the conditions were nor that all the conditions were caused by the accident. *See* TEX. CIV. PRAC. & REM.CODE § 18.001 (providing that "an affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary"). Nor do the few medical records for admission and consultation by physicians several months after the accident provide the causal link.[4]

■ Non-expert evidence of circumstances surrounding the accident and Arturo's complaints is sufficient to allow a layperson of common knowledge and experience to determine that Arturo's immediate post-accident condition which resulted in his being transported to an emergency room and examined in the emergency room were causally related to the accident. Thus, the evidence is legally sufficient to support a finding that some of his medical expenses were causally related to the accident. On the other hand, the evidence is

---

4. The physician histories were neither entirely consistent with each other nor with Corazon's testimony as to Arturo's condition before the accident. *See Crye,* 907 S.W.2d at 500.

not legally sufficient to prove what the conditions were that generated all the medical expenses or that the accident caused all of the conditions and the expenses for their treatment.

### III. Disposition

■ Because the evidence is legally insufficient to support a finding that the car accident caused all of the medical expenses awarded by the jury, we reverse the court of appeals' judgment. Generally we render judgment when a no evidence issue is sustained following a trial on the merits. *See Murdock*, 946 S.W.2d at 841. However, when there is evidence to support some damages it is not appropriate to render judgment. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314–15 (Tex. 2006); *Minn. Mining & Mfg. Co. v. Nishika Ltd.*, 953 S.W.2d 733, 740 (Tex.1997). In the latter instance we have both remanded cases to the court of appeals for determination of appropriate remittiturs, *see Tony Gullo Motors*, 212 S.W.3d at 310, and have remanded for new trials. *See Minn. Mining*, 953 S.W.2d at 739–40. We believe the proper course in this instance is to remand to the court of appeals to consider remittitur as to expenses for which expert evidence is required. If the court of appeals concludes that a proper remittitur cannot be determined, then the case should be remanded to the trial court for a new trial. *Id.*