# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00219-CV

### In re Westside Roofing, LLC and Paul Scott Lowery

### ORIGINAL PROCEEDING FROM TRAVIS COUNTY

## M E M O R A N D U M   O P I N I O N

Relators Westside Roofing, LLC, and Paul Scott Lowery (collectively, Westside) are defendants in the underlying personal injury suit brought by real party in interest Rocky Beard following a traffic collision that occurred in March of 2020. Westside disputed causation and sought production from Beard's treating physicians of medical records dating to approximately six years before the subject collision. Beard filed a motion to quash the discovery, which the trial court granted in part. Westside then filed this original proceeding, petitioning for a writ of mandamus and asserting that the trial court abused its discretion in quashing the discovery, leaving Westside without an adequate remedy by appeal. For the reasons set forth herein, we conditionally grant the writ.

## BACKGROUND

Beard alleges he was injured in a motor-vehicle collision with a pickup truck driven by relator Lowery while in the course and scope of Lowery's employment with the truck's owner, relator Westside Roofing, LLC. According to Beard, the accident occurred on a

highway as Lowery attempted to pass Beard's vehicle on the left. As Lowery re-entered Beard's lane of travel after partly overtaking him, the right side of the truck's rear bumper allegedly made contact with the front quarter-panel on the driver's side of Beard's vehicle near the wheel well.

Beard first sought medical attention approximately two weeks after the collision, complaining of immobilizing lower-back pain that had begun the morning after the incident and had increased in severity in the days that followed. In his deposition, Beard later testified to having previously sought treatment for pain in his lower back, and to having had an MRI of his lumbar region performed approximately two to three months before the subject collision.

In his suit, Beard named as defendants Lowery and Westside Roofing, LLC, together with its principal, asserting causes of action against Lowery for negligence and gross negligence in the operation of the vehicle, and against Westside Roofing, LLC, under a respondeat superior theory and theories of negligence and gross negligence in hiring, training, supervision, retention, and entrustment, as well as in the alleged failure to implement and maintain a safety program consistent with industry standards. For damages, Beard claims to have suffered "severe bodily injuries to his neck and back" as a result of the collision, and to "other parts of his body generally," and seeks monetary relief of more than $1 million. In their answers, relators entered a general denial, but also pled that any "illness, disease, or condition" Beard claimed "was and is the result of some prior or subsequent accident, injury, disease, physical defect, or bodily condition for which [Westside] is not responsible and which did not proximately result from the occurrence made the basis of this suit."

After significant written discovery and depositions, Westside served notices of intention to take deposition by written questions together with subpoenas duces tecum on four of

Beard's healthcare providers identified in previously obtained medical records, three of which had treated Beard years before the accident. Notices to those three providers requested production of medical, radiology, and billing records for Beard dating to as early as January 1, 2014, just over six years before the subject collision. Specifically, as relevant here, the subpoenas sought "any and all reports, notes, tests, test results, diagnoses, prognoses, office records, clinic records, therapy records, [and] correspondence," as well as "x-ray films …, CAT scans, bone scans, myelograms, EEGs/nerve conduction studies, MRIs, ultrasounds, or any other films or visual or audio representations."

Beard filed a motion to quash the notices, asserting that they were overbroad, not limited in scope and time, unduly burdensome, and harassing, and that they constituted a "fishing expedition," seeking information that was neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. More specifically, Beard objected to each request "to the extent that it seeks documents or information that is not relevant to any claim or defense in this case by asking for records regarding any part of the body, not properly limited to only those parts of the body injured in the incident that serves as the basis for this lawsuit."

In its response to the motion to quash, Westside argued that the previously produced medical records, together with Beard's own sworn testimony, "[made] clear that he was already experiencing some degree of both [neck and back pain] before this collision, along with neurological symptoms, all of which could reasonably account for the claims he makes in this lawsuit." For example, Westside included an exhibit showing a portion of Beard's previously obtained records reflecting a history of cervical radiculopathy, a condition characterized by nerve compression in the vertebrae of the neck. As to overbreadth, Westside argued that the six-year period covered by the requests was "documented in the [previously

3

obtained] records as encompassing time for which [Beard] was alleging ongoing neck and back, as well as neurological, complaints in multiple areas of his body." So limited, Westside argued, the requests were thus "made to encompass a reasonable timeframe before the accident, and to obtain information which is clearly relevant to the defense that the injuries alleged by [Beard] are not fairly attributed to the accident, but rather pre-date the collision in full."

At a hearing on the motion to quash, Beard's counsel argued that the "injuries claimed in this lawsuit are related to back and neck only" and that "the defense failed to provide evidence in their response that the treatment that plaintiff sought back in 2014 are [sic] related to back and neck." Further, he argued that "[t]he only evidence that they provide in this case, it relates to body aches and muscle pain" and "has nothing to do with neck and back." For that reason, he urged, the requested discovery was "not related to the accident" and therefore "not relevant." In response, Westside's counsel argued that "the record specifically references cervical radiculopathy, which is absolutely neck and radicular symptoms."

After the hearing, the trial court granted Beard's motion as to the three providers, denying it solely with respect to the fourth provider that had treated Beard only after the collision, and issued a one-page order that did not specify its grounds. This original proceeding followed.

**DISCUSSION**

Mandamus is an extraordinary, discretionary remedy available only when a trial court clearly abuses its discretion and the relator has no adequate remedy by appeal. *In re Dawson*, 550 S.W.3d 625, 628 (Tex. 2018) (orig. proceeding). The Supreme Court of Texas has held that mandamus is appropriate to correct an improper denial of discovery that prevents the

4

requesting party from developing a defense that goes to the heart of its case. *See In re K & L Auto Crushers, LLC*, 627 S.W.3d 239, 256 (Tex. 2021).

The scope of permissible discovery is governed by the Texas Rules of Civil Procedure. In general, the rules permit discovery of "any matter that is not privileged and is relevant to the subject matter of the pending action." Tex. R. Civ. P. 192.3(a). This includes information that "will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* As discovery is intended to ensure that disputes are decided on "what the facts reveal, not by what facts are concealed," the rules must be "liberally construed to allow the litigants to obtain the fullest knowledge of the facts and issues prior to trial." *In re K & L Auto Crushers*, 627 S.W.3d at 248.

Discovery also must be proportional to the needs of the case. *In re Liberty Cnty. Mut. Ins. Co.*, No. 22-0321, 2023 WL 7930099, at *3 (Tex. Nov. 17, 2023) (orig. proceeding) (citing *In re State Farm Lloyds*, 520 S.W.3d 595, 607 (Tex. 2017) (orig. proceeding)). Even where requested information is relevant and not privileged, a court must engage in case-by-case balancing in light of several factors, including the likely benefit of the requested discovery, the amount in controversy, the parties' resources, the importance of the issues at stake, and the importance of the proposed discovery in resolving the dispute, as well as any other articulable factor bearing on proportionality. *Id.*

Here, Westside contends that the trial court abused its discretion by denying discovery of information regarding Beard's past medical diagnoses and treatment history because that information falls within an exception to physician-patient privilege and is relevant and necessary to determine whether Beard's complained-of injuries may have resulted from a pre-existing condition. As to the lack of an adequate remedy on appeal, Westside argues that

5

denial of the requested discovery will vitiate or severely compromise its ability to present a causation defense, and that remedy by appeal will be inadequate because the missing discovery cannot be made part of the appellate record for the reviewing court to evaluate the effect of the error.

Beard argues in his Response that the trial court did not abuse its discretion because the information sought was irrelevant, making no mention of neck and back pain. He argues further that, even if the information sought were relevant, the requests would nevertheless be overbroad in seeking records not limited to the neck and back. Beard's response does not re-assert the privilege or undue-burden objections made to the trial court, and his discussion of the adequacy of the appellate remedy essentially restates his relevance argument, urging that, because the discovery sought pertains to bodily systems other than those alleged to have been injured in the accident, the omitted discovery cannot "make or break" Westside's case.

In applying the above-discussed discovery standards to the facts before us, we find guidance in a recent Texas Supreme Court decision handed down during the pendency of this original proceeding. Following a traffic collision in which she allegedly sustained personal injuries, real party Harris in *In re Liberty County Mutual Insurance Company* settled with the other motorist before suing her insurer Liberty for uninsured motorist benefits. 2023 WL 7930099, at *1. Liberty, the relator in that case, disputed the amount of damages and sought production from Harris's primary care physician of medical records dating to approximately five years before the subject collision, during which time she had been involved in five other car accidents, some of which caused injuries similar to those she sustained in the accident at issue. *Id*. Harris moved to quash Liberty's deposition on written questions and subpoenas, arguing that

6

each "on its face is overly broad, not limited in scope, and is a mere fishing expedition." *Id.* at *2. The trial court granted the motion, and Liberty sought a writ of mandamus. *Id.* at *1.

In conditionally granting the writ, the supreme court expressly endorsed Liberty's argument that "the requested documents [were] relevant and discoverable because Harris [had] placed the existence, causation, and extent of her alleged injuries at issue by suing and, indeed, testifying that she suffered back and neck injuries … in other accidents that occurred within the time period covered by the DWQs." *Id.* at *3. The court further agreed with Liberty that the trial court's order "precluding it from obtaining these records vitiates or severely compromises its ability to present a viable defense at trial." *Id.* Although Harris did not dispute relevance, focusing instead on overbreadth, the court nonetheless noted that "[i]n personal injury cases, relevant evidence at trial includes … evidence of the injured person's pre-occurrence condition," citing prior cases in which the court had "held that information about the insured's pre-existing medical condition at the time of the accident is relevant to the insurer's damages defenses." *Id.* at *4 (quoting *Guevara v. Ferrer*, 247 S.W.3d 662, 666-67 (Tex. 2007) and *In re Cent. Or. Truck Co.*, 644 S.W.3d 668, 670 (Tex. 2022) ). As to overbreadth, the court held that, because the requests spanned a period in which Harris had been involved in other car accidents, at least some of which involved similar injuries to those at issue in the litigation, "Liberty's request … [did] not seek production of records from 'an unreasonably long time period' so as to make it impermissibly overbroad." *Id.* (citing *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding)). Finally, the court held that Liberty lacked an adequate remedy on appeal because the complained-of order "prevent[ed] Liberty from obtaining records from Harris's Primary doctor regarding her pre-accident condition" and "thus [denied] Liberty a reasonable opportunity to develop a defense that goes to the heart of the case." *Id*. at *5. "And because the absent

7

discovery [was] from a third party," the court concluded, "the information sought [could not] be part of the appellate record, making it difficult, if not impossible, to determine on appeal whether its absence at trial affected the outcome." *Id*. at *5.

As to the relevance of the discovery Westside seeks, we discern no material distinction between the operative facts in *Liberty Mutual* and those before us. As in *Liberty Mutual*, Beard's suit "requires [him] to prove in this case [Westside's] liability for the accident and the existence and amount of [his] damages." *See id*. at *4 (citing *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 788 (Tex. 2021)). Beard's "pre-existing medical condition at the time of the accident" is therefore "relevant to [Westside's] damages defenses." *See id*. Also as in *Liberty Mutual*, initial discovery in this matter (including Beard's own deposition testimony) reveals that he has a history of conditions relating to the neck and back, including a diagnosis of cervical radiculopathy and a recent MRI of his lower spine. Here, as in *Liberty Mutual*, the records sought may reveal details of Beard's pre-accident condition that "could affect a factfinder's decision about the causal link between [his] physical injuries and the [subject] accident." *Id*.

The *Liberty Mutual* court's overbreadth analysis also controls here. In that case, the court noted that Liberty's request had been "limited to documents pertaining to the care, treatment and examination of … Harris, which [was] a relevant subject for discovery given the dispute over the existence, cause, and extent of Harris's alleged personal injuries." *Id*. Moreover, "[n]othing in the record suggest[ed] that the trial court considered the proportionality factors" as required under applicable precedents. *Id*. (citing *State Farm Lloyds*, 520 S.W.3d at 615). The same is true here. Westside's requests are similar to—and in some respects narrower than—those at issue in *Liberty Mutual* and cover a comparable span of time (six years as

8

compared to five), delineated by the period during which relevant pre-existing conditions may have been diagnosed or treated.[1] And, for purposes of abuse-of-discretion analysis, we note that, as in *Liberty Mutual*, the record here gives no indication that the trial court considered or applied any of the proportionality factors discussed in *State Farm Lloyds* and elsewhere.

Importantly, we cannot and do not reach the issue of whether the contested discovery requests as drafted would be overbroad if directed to a third-party provider not shown from the record to have treated the plaintiff for symptoms the relator argues better explain the plaintiff's complaints. Rather, we hold that, on this record, with the evidence of specific health complaints adduced from the previously obtained discovery, the rule in *Liberty Mutual* requires allowing the requested discovery. And although, ultimately, the discovery might not be admissible, we hold that the requests are reasonably calculated to lead to admissible evidence.

Finally, as to the adequacy of an appellate remedy, *Liberty Mutual* controls here as well. There, as here, the requested discovery had the potential to "produce information that undercuts the evidence adduced by [Beard] regarding the cause of [his] ailments," such that "[t]he discovery order thus denies [Westside] a reasonable opportunity to develop a defense that

---

[1] As to medical records, Liberty sought "[a]ll documents and records stored in any format or method including, but not limited to, all medical records, intake forms, patient completed forms and/or documents, correspondence, all office records, emergency room records or reports, inpatient and outpatient charts and records, lien files, SOAP notes, pathology records and reports, lab reports, pharmacy and prescription records, physical therapy records, sign-in sheets, all descriptions of exercises prescribed, documentation which indicate date and time of patient's appointments, insurance documents, all radiology reports and readings, and any other documents maintained pertaining to the care, treatment and examination" of Harris for a five-year period. *In re Liberty Cnty. Mut. Ins. Co.*, No. 22-0321, 2023 WL 7930099, at *3 (Tex. Nov. 17, 2023) (orig. proceeding). As to imaging, Liberty sought "all original x-rays [sic] films, CT scans, MRIs and any other scans or images maintained ... and all radiological reports and records maintained, including a comprehensive list of all dates and body parts of all films, CT scans, MRIs and all other images or scans taken and/or maintained, pertaining to" Harris for the same period.

goes to the heart of its case." *See id*. at \*5. And, as in *Liberty Mutual*, "because the absent discovery is from a third party, the information sought cannot be part of the appellate record" and thus will not be available for the appellate court's review. *Id*.

## CONCLUSION

For the foregoing reasons, we conditionally grant the requested relief and direct the trial court to vacate the portion of its February 23, 2023, order granting the motion to quash. The writ will issue only if the trial court does not comply.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Theofanis

Filed: January 5, 2024