**Motion for En Banc Reconsideration Denied as Moot; Motion for Rehearing Granted; Majority and Dissenting Memorandum Opinions of March 20, 2023, Withdrawn; Judgement of March 20, 2023, Vacated; and Substitute Majority and Dissenting Memorandum Opinions filed June 25, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-20-00765-CV

---

**ZHAOHONG WU AND YANJING ZHOU, INDIVIDUALLY AND AS NEXT FRIENDS OF K. W. AND E. W., THEIR MINOR CHILDREN, Appellants**

**V.**

**LUMBER LIQUIDATORS, INC. AND WOOD FLOOR ARTISANS, A GENERAL PARTNERSHIP COMPOSED OF VICTOR MARTINEZ-MEDINA AND AMBER LEE MARTINEZ, Appellees**

---

**On Appeal from the 164th District Court
Harris County, Texas
Trial Court Cause No. 2016-08354**

---

### SUBSTITUTE DISSENTING MEMORANDUM OPINION

Did appellants present more than a scintilla of evidence on causation for their claims for property damages? The majority says yes because "failure to properly test the concrete slabs—was directly tied to 'moisture related issues' which, as the

parties agree, causes mold." This is an overstatement—the parties agree that moisture causes mold, not that the "moisture related issues" resulted in the mold in the appellants' home. It's the link between the two, or the causation portion, that the parties dispute. In their no evidence motion for summary judgment, appellees challenged causation. Appellants failed to bring forth more than a scintilla of evidence of causation; thus I would affirm the trial court's summary judgment on this ground.

Regarding causation, appellees argued that all of appellants' claims should be dismissed because appellants "have failed to adduce any evidence in support of their basic theory regarding the cause of the mold." Appellees alleged that "because [appellants'] sole theory of causation is unsupported by competent evidence, each of [appellants'] claims, all of which rely on this theory, lack evidence of an essential element and should be dismissed."

Appellants responded to the no-evidence portion of the motion arguing that their position is that "elevated moisture levels were introduced into their home as a result of [appellees'] negligent installation of wood floors" and that the elevated moisture levels caused mold that damaged appellants' home and health. "Because [appellees'] own investigation . . . confirmed causation, [appellants] need not provide expert testimony . . . to survive summary judgment." Appellants pointed to appellees' pre-lawsuit investigation that noted "there were no site issues present," which appellants alleged demonstrates that there were no other moisture sources that could have contributed to the growth of the mold in the home. Appellants relied on the expert opinions of Rick Jones and Paula Vance to support the causation element. Vance's opinions were excluded by the trial court, but Jones's opinions were not.

## A. Analysis

Appellants contend that their expert Rick Jones, as well as the investigations done by appellees, provide sufficient evidence of causation to overcome appellees' no-evidence motion for summary judgment. I address, in turn, the evidence appellants produced.

### 1. Appellants' Expert Rick Jones

Jones inspected the home and flooring in May 2017, approximately two years after the installation. Jones observed the "flooring float" applied by the installers was "soft and powdery" and there were "open holes/bubbles through where they had used the float." Jones concluded that (1) the "bamboo flooring cupped and buckled consistent with excessive moisture from the concrete subfloors"; (2) the installers did not check the exterior of the home for gutters and other concerns according to the homeowner and, if competent and trained, they would have brought this to the homeowner's attention; (3) the installers did not perform ASTM[1] moisture testing as required per the flooring manufacturer and adhesive manufacturer; (4) the adhesive was not applied as required by the adhesive manufacturer to form a moisture barrier as shown by Jones's observations and photos; (5) cupping within two weeks of installation is "consistent with excessive moisture being present at the time of the installation;" (6) a soft powdery float is consistent with the float being over watered; (7) thin film, bubble holes, and soft powdery consistency of the float are consistent with the float having been mixed with too much water; (8) excessive water in the float may have also contributed to the moisture causing the cupping and buckling; (9) if mixed properly the float will not scratch easily or be soft or powdery;

---

[1] ASTM is an acronym for American Society for Testing and Materials.

3

and (10) based on "the evidence collected, the cause of the cupped and buckled flooring [was] the installers."

Jones's opinion is that the flooring failed due to excessive moisture and that such demonstrated failures were consistent with the presence of excessive moisture and an improperly placed moisture barrier. However, Jones says nothing as to whether this excessive moisture from the alleged improperly placed moisture barrier was a substantial factor in bringing about the harm complained of—the mold throughout the household. Jones's opinion also indicated that the flooring failure was "consistent with excessive moisture being present at the time of the installation." Jones says nothing about the mold in the home or whether the excessive moisture that existed at the time of the installation and when the moisture barrier was not properly applied, was a substantial factor in the alleged mold infestation in appellants' home. In other words, there is no evidence in Jones's opinion or report that the ultimate harm, the alleged mold in the home, was caused by the alleged negligent floor installation.

### 2. Appellees' Investigation—MAPEI

After issues with the flooring installation were reported, appellees conducted an investigation through two companies. On company identified as "MAPEI" investigated the cause of the flooring failure. After reviewing the information "submitted with the Site Report," the MAPEI report concludes the possible causes "can be attributed to one or more, but not limited to," the following:

> Failure to properly test concrete slabs prior to installation . . . can produce moisture related issues;
>
> Lack of required expansion space will result in . . . stress when planks shrink and swell, resulting in cupping and buckling . . .
>
> Failure to properly . . . acclimate . . . will result in continued expansion or contraction of the flooring.

4

Nothing in this document discusses mold. Appellants argue that this report demonstrates the "cause of moisture in Appellants' home." However, this report merely states that a failure to test the concrete subfloors *can* produce moisture-related issues, not that it did in this case. At most this report states that reviewing the information submitted shows that there *could* be moisture-related issues causing the problems with the flooring but does not state that is the only possible cause for the reported issues with the flooring. Further, the report says nothing about the cause of the mold in the home. Therefore, the MAPEI report cannot raise a fact issue regarding the cause of the mold in the home.

### 3. Appellees' Investigation—Inspect Solutions

The inspector from Inspect Solutions came to appellants' home to look at the flooring installation within a few months after the installation of the bamboo flooring. The homeowner "arranged to have planks removed at three locations." The inspector found "cupping and loose/buckled planks" and "no expansion space at walls [i]n all rooms." The inspector took moisture readings in the rooms of the home where the flooring was cupping. His moisture readings were between average and high in these areas. The inspector concluded that the flooring was not properly acclimated or prepared prior to installation and there was not enough expansion space resulting in excess stress on the planks. The inspector also concluded that the failure "to properly test concrete slabs prior to installation of Bamboo flooring will result in flooring being installed into a wet environment which produces moisture related issues as in this case." The inspector further concluded that "[a]ll of the issues above are either directly responsible or a contributing factor in the issues" of which appellants complain and the issues are "installation related."

This inspection report also did not include any findings regarding mold and only indicated that "moisture related problems or issues" were either directly

responsible or a contributing factor of the flooring failure. The inspection report did not indicate that the inspector found any mold, but that the moisture readings were between average and high in the areas that the flooring was cupping.

### 4. Conclusion

While the three reports pointed to by appellants indicate the presence of elevated moisture in the home, there is no indication in any of these reports that this elevated moisture caused mold. None of the reports mentions or even contains the word mold, much less opines that the moisture present as a result of the flooring installation was a substantial factor in the mold alleged to have occurred throughout the home. There may be a fact question as to whether the elevated moisture levels "were introduced into the home as a result of" the installation, but appellants have failed to produce any evidence as to the cause of the mold in the home.

Appellants contend that they do not need an expert opinion to support causation and defeat the no evidence summary judgment motion. However, Jones's expert report and appellees' investigative reports are insufficient to raise a fact issue on causation of the mold in appellants' home. *See Jelinek v. Casas*, 328 S.W.3d 526, 533 (Tex. 2010) ("[C]orrelation does not necessarily imply causation . . . . '[e]vidence of an event followed closely by manifestation of or treatment for conditions which did not appear before the event raises suspicion that the event at issue caused the conditions. But suspicion has not been and is not legally sufficient to support a finding of legal causation.'" (quoting *Guevara v. Ferrer*, 247 S.W.3d 662, 668 (Tex. 2007))); *see also Kelly*, 2007 WL 527911, at \*7 ("Although the summary judgment evidence showed the Kellys' home may have had mold contamination, it did not show that their personal property was contaminated by mold due to a covered peril, i.e., a plumbing leak.").

Appellants failed to provide evidence of causation for their claims related to the mold in their home for the property-related claims.  For these reasons, I respectfully dissent.


/s/    Ken Wise
Justice


Panel consists of Justices Wise, Spain, and Hassan. (Hassan, J., majority).