**Affirmed and Majority and Dissenting Opinions filed December 16, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00048-CV

---

## FARMERS TEXAS COUNTY MUTUAL INSURANCE COMPANY, Appellant

### V.

## ASHLEE ELIZABETH PAGAN, Appellee

---

**On Appeal from the 60th District Court**
**Jefferson County, Texas**
**Trial Court Cause No. B-182,564**

---

## D I S S E N T I N G   O P I N I O N

### I.  Introduction

Farmers appeals urging reversible error in the exclusion of evidence and insufficiency of the evidence to support the personal injury judgment for damages. The Majority affirms.  In my view, the Majority erroneously shifts plaintiff's burden to prove medical causation to the defendant to disprove an inadequate and incomplete differential diagnosis.  I respectfully dissent.

## II. Exclusion of Evidence

Few and far between are the cases in which the exclusion of evidence amounts to reversible error. This is one such case.

The timeline of what the Majority characterizes as Pagan's "lasting shoulder injury" places the excluded 2009 horse-incident evidence in context and thereby belies the conclusion the Majority reaches about its admissibility:

- 3/2008. Pagan is in a motor vehicle accident (MVA). She does not report a shoulder injury at that time.

- 4/2008 – 4/2009. Pagan sees her doctor five times in the year following the MVA and never once mentions her shoulder.

- EXCLUDED. 4/2009. Pagan falls from a horse and suffers an injury. (Pagan sworn interrogatory response).

- EXCLUDED. 4/2009. Pagan returns to her doctor and requests back and shoulder x-rays. (Faseler records).

- EXCLUDED. 4/2009. Pagan reports to Diagnostic Health for the back and shoulder x-rays she requested. Diagnostic Health reports the history as: "Trampled by a horse, contusions." (Diagnostic Health records).

- Pagan's shoulder diagnostics and treatment continue from April 2009 with an uninterrupted course of x-rays, MRIs, repetitive steroid injections, repetitive pain medication, physiotherapy, and physical therapy. Surgery is recommended.

The Majority concludes that all evidence of Pagan's April 2009 fall from a horse was properly excluded pursuant to (1) Rule 403 of the Texas Rules of Evidence because it would confuse the jury; and (2) Rule 702 of the Texas Rules

2

of Evidence because Farmers did not prove the horse incident is a plausible cause of Pagan's injuries, in whole or in part.[1]

Addressing Rule 403, the Majority concludes there is no "factual correlation" between the 2009 horse incident and the "lasting injuries for which Pagan recovered damages in this case." The statement is belied entirely by the medical records. The very first diagnostic study of Pagan's shoulder, an x-ray performed at Pagan's request in April 2009, bears the history: "Trampled by a horse, contusions." Prior to April 2009, Pagan never complained of a shoulder injury,[2] never received a diagnosis of shoulder injury, never received a pain pill for shoulder pain, never received an injection into her shoulder, and never had physiotherapy or physical therapy for the shoulder. But the Majority concludes that the jury would be confused because the April 2009 x-ray Pagan requested was normal. If the jury was confused about medical causation because the 2009 x-ray was normal, the jury would be no less confused that neither Pagan nor her physician *requested* an x-ray of the shoulder at any time in 2008 following the MVA.

Conversely, the factual correlation between the 2009 horse incident and the shoulder complaint is overwhelming. As mentioned, after Pagan fell from the horse in April 2009, she asked for shoulder and back x-rays; they were normal.

---

[1] These are "other legitimate bases" for exclusion considered by the Majority. Pagan objected to all of Farmers' proffered 2009 horse-incident evidence on the sole basis that Farmers did not bring expert testimony to establish a link between the 2009 horse incident and Pagan's shoulder injuries.

[2] Though Pagan sought no medical assistance on the day of the 2008 MVA, she went to an emergency room physician the following day. The physician noted her neck and back complaints in two places on the intake. That form also provided two opportunities for the physician to mark or note a shoulder complaint; it isn't marked or noted. In the five visits Pagan made to a doctor between that emergency visit and the April 2009 horse incident, the word "shoulder" does not appear once in the medical records.

3

She returned to her doctor, Dr. Faseler, in October 2009 with continued shoulder pain. In May 2010, Dr. Faseler referred Pagan to Dr. Beaudry for continued complaints of shoulder pain. Dr. Beaudry treated it with pain medication and steroid injections. Dr. Beaudry again saw Pagan for shoulder pain in January 2011. He referred her to a neurosurgeon who performed unsuccessful physiotherapy on Pagan's shoulder. Dr. Beaudry saw Pagan yet again for shoulder pain in July and August 2011. He conducted additional studies and prescribed additional pain medication and injections.

Rule 403 does not contemplate the exclusion of evidence merely because it is controverted or offers competing theories of causation. The jury might have believed Pagan's post-interrogatory testimony that she did not really fall or she wasn't really injured when the horse bumped her. The jury might have believed Pagan's testimony and that of her boyfriend that she really did suffer a shoulder injury in 2008. The jury might have believed that all of Pagan's injuries and all of Pagan's damages in the past and in the future are attributable to the 2008 MVA. In my view, however, neither the trial judge nor this court may "believe" the truth of Pagan's causation evidence to determine the admissibility of Farmers' controverting evidence on causation. Causation was the only issue in this case. It was the role of the jury to examine the disputed facts. But, the jury never knew there was a dispute about what caused Pagan's injuries because they never heard a word about her falling from a horse. If causation evidence is "confusing" under Rule 403 because it creates a dispute, then Rule 403 excludes all but evidence of sole cause. Such a construction of the rule finds no support in Texas law.

Next, the Majority affirms the exclusion of the medical records and testimony under Rule 702. Farmers proffered deposition testimony from Pagan's medical causation expert, showing that:

4

- Dr. Beaudry, in rendering his opinion about the cause of Pagan's 2012 injuries, was completely unaware that Pagan had suffered an intervening fall from a horse for which she received medical treatment to her neck and shoulder;

- Dr. Beaudry felt that information would have been "an important piece of medical history that [he] would have liked to have known before treating her"; and most importantly

- Dr. Beaudry agreed it is "possible that an incident involving a horse trampling its rider could cause an injury similar to the ones that Ms. Pagan is complaining about and seeking treatment [for]."

Though he rendered a causation opinion on the basis of a differential diagnosis, Dr. Beaudry had not seen any of the medical records (1) from the emergency room visit following the 2008 MVA; (2) from Pagan's regular physician for April 2008 to April 2009; or (3) from the Diagnostic Health report, which noted Pagan was trampled by a horse.

The Majority acknowledges that the differential diagnosis, as part of Pagan's substantive burden of proof, requires Dr. Beaudry to exclude other plausible causes of the injuries for which Pagan seeks compensation "'with reasonable certainty.'" *See Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 218 (Tex. 2010) (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 720 (Tex. 1997)). But, the Majority characterizes Dr. Beaudry's above statements as "expert opinions." The Majority then concludes that because Farmers elicited those "opinions" from Pagan's expert, Farmers had the burden to establish that the "opinions" were reliable. Yet, Farmers failed to prove those "opinions" were reliable by showing Dr. Beaudry had a reliable basis for reaching the "opinions"—such as looking at the records Pagan did not give him. In short, holds the Majority, the trial court properly excluded Dr. Beaudry's "opinion" that the fall from a horse is a possible

5

cause of Pagan's injuries because Farmers did not establish that Pagan's expert had a reliable basis for saying it is a possible cause.

The Majority's authority for placing this "plausible cause" *evidentiary* burden on Farmers is confusing. The Majority relies upon cases that apply Rule 702 to plaintiffs' experts and defendants' experts alike. But Farmers was not eliciting opinions from its own expert. Farmers was showing the flaws in Pagan's expert testimony. The Majority would have a defendant's cross examination of an expert on a differential diagnosis delayed or denied until that defendant brings its own expert witness to establish plausible alternative causes that should have been included in that differential diagnosis. No Texas case has ever held this to be the standard for cross examining a differential diagnosis.

The Majority's authority for placing the "competent evidence" *evidentiary* burden on Farmers' right to cross examine the differential diagnosis is equally confusing. The Majority cites *Jelinek v. Casas*, 328 S.W.3d 526 (Tex. 2010), and *Guevara v. Ferrer*, 247 S.W.3d 662 (Tex. 2007). Both *Jelinek* and *Guevara* are legal sufficiency cases. More specifically, both cases analyze the sufficiency of the evidence to prove the plaintiff's case. *See Jelinek*, 328 S.W.3d at 538 (holding that the expert's causation testimony is "legally insufficient to support the jury's verdict" and therefore, "the Casases failed to prove causation"); *Guevara*, 247 S.W.3d at 670 (holding that "the evidence is legally insufficient to support a finding that the car accident caused all of the medical expenses awarded by the jury").

Neither *Jelinek* nor *Guevara* analyzes admissibility of evidence at all.[3] Neither case suggests that a defendant must establish a causal connection through

_____

[3] However, *Guevara* does acknowledge that evidence of temporal proximity is relevant to causation. 247 S.W.3d at 668.

medical testimony prior to cross examining the plaintiff's expert on a differential diagnosis or adducing evidence of other possible causes. Neither Pagan nor the Majority cite a single case holding that a defendant may not cross examine a medical expert on possible causes of an injury without first establishing with other evidence that the posited "possible" or "plausible" cause is, to a reasonable degree of medical certainty, the proximate cause. If it is the defendant who must prove "proximate cause" on all potential causes other than the cause plaintiff alleges, then a plaintiff who establishes medical causation through "differential diagnoses" need not differentiate at all.

Texas law consistently requires the proponent of a differential diagnosis to exclude other plausible causes. There is no reason to believe that the Texas Supreme Court did not choose its words carefully: "[I]f *evidence presents* 'other plausible cause of the injury or condition that *could* be negated, the [proponent of the testimony] must offer evidence excluding those causes with reasonable certainty.'" *Crump*, 330 S.W.3d at 218 (quoting *Havner*, 953 S.W.2d at 720) (first emphasis added; alteration in original). The Court did not say "evidence proves." The Court did not say "reliable evidence establishes." The Court did not say "evidence based upon a reliable foundation presents." The evidence in this case does "present" a plausible cause. Pagan admitted that the fall occurred. Dr. Beaudry acknowledged the fall as a possible cause of Pagan's injuries. We should not require more.

I would hold that all of the evidence excluded regarding Pagan's April 2009 injury from falling from a horse is relevant and its probative value is not substantially outweighed by the danger of unfair prejudice or confusion; and I would hold that Farmers had no burden to bring "reliable medical testimony" to

7

prove a causal connection between the shoulder injury and the horse incident before it could cross examine Pagan or her expert about the incident.

## III. Sufficiency of the Evidence

As an independent reason to reverse, Pagan's medical causation evidence is factually insufficient to support the jury verdict and judgment. Pagan's medical expert, Dr. Beaudry, assumes as part of his differential diagnosis that Pagan suffered no injury between her prior 2008 MVA and her 2012 shoulder complaints. Based upon Pagan's sworn interrogatory response, Dr. Beaudry's assumption is demonstrably false. Therefore, Dr. Beaudry's opinion is no evidence. As Dr. Beaudry's opinion is Pagan's only evidence of causation, the evidence is factually insufficient to support the jury verdict. The Majority holds otherwise. For this additional reason, I respectfully dissent.

The plaintiff bears the burden to establish medical causation, and the plaintiff may do so through differential diagnosis. *Crump*, 330 S.W.3d at 217. A reliable differential diagnosis identifies the cause of a medical problem by eliminating possible causes until the most probable one is isolated; the possible causes are established through physical examination, taking of medical history, and review of clinical tests. *See Praytor v. Ford Motor Co.*, 97 S.W.3d 237, 245 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Differential diagnosis is the methodology used by Pagan's medical expert on causation in this case, Dr. Beaudry.

Specifically, Dr. Beaudry gave the following testimony regarding his method of diagnosis:

> Well, as in, you know, examination — in, you know, problem solving, patients — diagnosis of the — you have to obtain a good history, to start off with. And secondly, you have to do the proper physical

8

examination. Having done these two things, then you decide on which tests you think would be most reliable in — in obtaining diagnosis. You do the tests. You put all this together. You come to a diagnosis, and then you treat the patient appropriately.

Dr. Beaudry first saw Pagan in May 2010[4] upon a referral from Pagan's regular physician, Dr. Faseler. The history Dr. Beaudry received was "complaints of pain over the anterior aspect of her left shoulder, and this following a motor vehicle accident, which occurred in March of 2008." Dr. Beaudry described Pagan's complaints of "fairly long-standing pain over her neck and her left shoulder." He took a history from Pagan—one that did not include the 2009 injury. Yet, he assumed that Pagan gave him a full and accurate history agreeing that "the information you receive from your patients you assume are [sic] true because you're not gonna go out and verify whether that's true or not." Pagan told him that the problems in her neck that were "just radiating into her left shoulder" had been going on since the 2008 MVA. Prior to trial, Pagan returned to Dr. Beaudry again in January 2011 and July 2011 and both times repeated her complaints about her shoulder. During neither of those visits did Pagan supplement with a history of the 2009 injury falling from a horse.

Ultimately, Dr. Beaudry gave the opinion that Pagan was experiencing a "degenerative disc, which possibly *could have been caused* by the—the trauma of the motor vehicle accident three—three years earlier."[5] As for her shoulder, Dr. Beaudry testified that "as far as I know, she'd never had any previous shoulder problems prior to that motor vehicle accident. That's when she started having trouble with her shoulder." So, Dr. Beaudry opined that Pagan suffers left

---

[4] Dr. Beaudry had previously treated Pagan in 2003 in connection with a different MVA but was not her regular physician.

[5] This opinion fails to establish a causal connection to a reasonable degree of medical probability between the 2008 MVA and the degenerative disc as a matter of law.

shoulder "chronic bursitis, tendinitis, a rotator cuff problem" as a result of the 2008 MVA.

Completely independent of whether the horse-incident evidence was admissible, Dr. Beaudry's failure to consider the horse incident renders his opinion no evidence in two separate ways. First, his differential diagnosis fails upon application of the factors established by *E. I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 557 (Tex. 1995). *See Crump*, 330 S.W.3d at 216–17 (noting that *Robinson* applies with equal rigor to a differential diagnosis method).

Specifically, a differential diagnosis fails the criteria if it is "too dependent upon the physician's subjective guesswork." *Id.* at 218. Here, Dr. Beaudry relied exclusively upon subjective guesswork when he trusted the subjective, but incomplete, medical history from Pagan and failed to review Pagan's complete medical records. Dr. Beaudry did not review the emergency records from one day following the 2008 MVA that contained no complaint of shoulder injury. Dr. Beaudry did not review Dr. Faseler's records from Pagan's 4/21/08, 5/9/08, 6/25/08, 10/8/08 or 12/2/08 visits—visits that contain no complaint of shoulder injury.

Under any application of the *Robinson* factors, Dr. Beaudry's opinion amounts to no more than a guess that the trauma of the 2008 MVA lead in an unbroken, temporal chain to Pagan's 2012 complaints. He never considered whether the 2009 fall-from-a-horse trauma started the temporal chain or contributed to the temporal chain. He never offered any explanation about how the MVA caused the injuries at issue.

Second, but related, Dr. Beaudry's opinion is no evidence because he based his differential diagnosis upon false assumptions. Dr. Beaudry based his causation opinion in this case on the assumption that Pagan suffered no other physical injury between the 2008 MVA trauma and the "lasting" physical injuries she continued to

10

suffer in 2012. Pagan's sworn interrogatory response proves this assumption to be false. Dr. Beaudry based his causation opinion in this case on the further assumption that Pagan started having trouble with her shoulder when she was in the 2008 MVA. Pagan's 2008 hospital records and all other pre-2009 medical records contradict that assumption as well. But Pagan did not supply any of that information to Dr. Beaudry. Premised upon false assumptions, Dr. Beaudry's causation opinion is unreliable, incompetent, and constitutes no evidence. *See Houston Unlimited, Inc. Metal Processing v. Mel Acres Ranch*, 443 S.W.3d 820, 833–34 (Tex. 2014); *see also Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995) (holding that "[w]hen an expert's opinion is based on assumed facts that vary materially from the actual, undisputed facts, the opinion is without probative value and cannot support a verdict or judgment").

Because Dr. Beaudry's medical opinion is no evidence and Pagan supplied no other medical causation evidence, the evidence is factually insufficient to support the verdict.

## IV. Conclusion

Farmers did not sue Pagan. Farmers did not allege contributory negligence. Farmers did not designate a responsible third party under Chapter 33. Farmers did not ask for an instruction on new and independent cause. Farmers did not have a burden of proof. Therefore, we are not evaluating the sufficiency of Farmers' evidence.

Farmers offered evidence. Farmers offered Pagan's interrogatory, Pagan's testimony, and Pagan's medical records to show that Pagan's claims she suffered no other injury were not true. Farmers offered Dr. Beaudry's deposition excerpt because it is their cross examination of his differential diagnosis. Farmers' evidence—each proffer individually or in its entirety—was relevant to Pagan's

11

credibility and the basis (or lack thereof) for Dr. Beaudry's differential diagnosis. Farmers did not bear a burden to bring medical testimony that the horse incident was a proximate cause of Pagan's shoulder injury before it was entitled to put on its defense.

Because the Majority holds otherwise, I respectfully dissent.


/s/        J. Sharon McCally
                        Justice


Panel consists of Justices McCally, Busby, and Donovan. (Busby, J., majority).