

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-16-00086-CV

DEBRA KNOX, STEVEN DUNNING,
PAMELA JOHNSON, AND PENNY
ORTIZ, INDIVIDUALLY AND AS
REPRESENTATIVE OF THE
ESTATE OF PATTY DUNNING,
DECEASED

APPELLANTS

V.

TAHIR RANA, M.D., NORTH TEXAS
CANCER CENTER, L.P., AND
GAINESVILLE CANCER CENTER,
LLC

APPELLEES

----------

FROM THE 235TH DISTRICT COURT OF COOKE COUNTY
TRIAL COURT NO. 14-00009

----------

## MEMORANDUM OPINION[1]

----------

---

[1]*See* Tex. R. App. P. 47.4.

## I. INTRODUCTION

Appellants Debra Knox, Steven Dunning, Pamela Johnson, and Penny Ortiz, individually and as representatives of the estate of Patty Dunning, filed suit against Appellees Tahir Rana, M.D.; North Texas Cancer Center, L.P.; and Gainesville Cancer Center, LLC alleging the wrongful death of their mother, Patty Dunning, based on Appellees' medical negligence. The trial court granted partial summary judgment for Appellees on Appellants' wrongful death claims, ruling that Appellants' wrongful death claims "cannot be maintained against [Appellees] as a matter of law." On Appellants' motion, the trial court then signed an order granting Appellants' nonsuit of their survival claims, making the partial summary judgment for Appellees a final judgment. Appellants perfected this appeal. In three issues, Appellants assert that the trial court erred by granting the partial summary judgment because it was not proper as a matter of law, because fact issues exist, and because Appellants provided summary judgment evidence establishing their right to have a jury decide their wrongful death claims. For the reasons set forth below, we will affirm the trial court's judgment.

## II. THE SUMMARY JUDGMENT EVIDENCE

The summary judgment evidence established that Patty Dunning had survived breast cancer and endometrial cancer. Dunning was receiving radiation treatment by Dr. Rana—an agent of North Texas Cancer Center, L.P. and Gainesville Cancer Center, LLC—for a basal cell carcinoma lesion on her nose. Dr. Rana ordered a PET scan for Dunning based on her prior history of cancer.

2

A PET scan was conducted on November 7, 2011, and the radiologist's report indicated that a mass in the area of Dunning's pelvis was "suspicious for metastatic disease." Appellants proffered summary judgment evidence that Dr. Rana never informed Dunning of her metastatic disease or ordered treatment for her. Appellees, on the other hand, proffered summary judgment evidence that Dunning was informed that the PET scan finding in her pelvis was "worrisome" and required a "follow-up" PET scan in about three months. Dunning did not undergo a follow-up PET scan, and in October 2012, she was diagnosed with metastatic cancer by Dr. Robin Lacour in Shreveport, Louisiana. Dunning ultimately died on July 9, 2013, at the age of seventy-six as a result of her metastatic cancer.

### III. STANDARD OF REVIEW

We review de novo a trial court's granting of summary judgment. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Traditional summary judgment is proper when the movant establishes that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). A defendant moving for summary judgment must conclusively negate at least one essential element of each of the plaintiffs' causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). "Once the defendant produces sufficient evidence to establish the right to

3

summary judgment, the plaintiff must present evidence sufficient to raise a fact issue." *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

#### IV. THE LAW: NO WRONGFUL DEATH CLAIM EXISTS FOR LOSS OF A "LESS-THAN-EVEN CHANCE OF AVOIDING DEATH"

The Texas Supreme Court has held that Texas's Wrongful Death Act "authorizes recovery solely for injuries that cause *death,* not injuries that cause the loss of a less-than-even chance of avoiding death." *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 404 (Tex. 1993); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 71.002(b) (West 2008). As the Texas Supreme Court explained in *Columbia Rio Grande Healthcare, L.P. v. Hawley*,

> Recovery in a medical malpractice case requires proof to a reasonable medical probability that the injuries complained of were proximately caused by the negligence of a defendant. Proximate cause includes two components: cause-in-fact and foreseeability. Proof that negligence was a cause-in-fact of injury requires proof that (1) the negligence was a substantial factor in causing the injury, and (2) without the act or omission, the harm would not have occurred. *These standards bar recovery by a patient if a condition preexists the negligence of a health care provider and at the time of the negligence, the condition resulted in the patient having a 50% or less chance of cure or survival*.

284 S.W.3d 851, 860 (Tex. 2009) (emphasis added and citations omitted). When a health care provider's alleged negligence is the failure to diagnose or to timely diagnose a preexisting cancer and the preexisting cancer has made the patient's "chance of avoiding the ultimate harm improbable even before the allegedly negligent conduct occurs—i.e., the patient would die or suffer impairment anyway—the application of these traditional causation principles will totally bar

4

recovery, even if such negligence has deprived the patient of a chance of avoiding the harm." *Kramer*, 858 S.W.2d at 400 (emphasis removed); *see also Parrott v. Caskey*, 873 S.W.2d 142, 148–49 (Tex. App.—Beaumont 1994, no pet.) (upholding instructed verdict for doctors on wrongful death claims premised on doctors' failure to diagnose cancer that was terminal at the time of the failure to diagnose). Because medical expert testimony is typically required to establish causation as to medical conditions outside the common knowledge and experience of jurors, *see Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007), a wrongful death plaintiff asserting medical negligence in the failure to timely diagnose or treat an underlying preexisting condition that causes death must proffer medical expert testimony that at the time of the medical negligence, the patient's chance of surviving the preexisting condition exceeded 50%. *See Hawley*, 284 S.W.3d at 861–62 (outlining plaintiff's expert testimony that patient had 60% or 65% five-year survival rate for her type of cancer at time of medical negligence); *Parrott*, 873 S.W.2d at 148–49 (upholding instructed verdict based on lack of such medical expert testimony).

## V. SUMMARY JUDGMENT ANALYSIS

Appellees filed a traditional motion for summary judgment alleging that their summary judgment evidence conclusively negated the causation element of Appellants' wrongful death claims.[2] The trial court's order granting summary

---

[2]Appellees' motion for partial summary judgment alleged that they were entitled to partial summary judgment because Appellants "are unable to prove at

5

judgment for Appellees stated that "the evidence before the Court supports the Defendants' Motion, and that the Plaintiffs' cause of action pursuant to the Texas Wrongful Death Statute cannot be maintained against the Defendants as a matter of law." Appellees' summary judgment expert testimony concerning causation established that Dunning's endometrial cancer, for which she underwent a hysterectomy in 2010, had metastasized before her hysterectomy and before she saw Dr. Rana for treatment of the basal cell carcinoma on her nose—and that thus, the November 7, 2011 PET scan revealed a pre-existing mass in the area of Dunning's pelvis that was "suspicious for metastatic disease." Testimony provided via a deposition excerpt from Dr. Samuel Lifshitz, one of Appellees' medical experts, explained:

> Now, by the time she saw Dr. Rana, this tumor was already metastatic. It was already too late. If prior to that, when she was supposed to be followed by Dr. Hancock,[3] if a possibility of this could been detected early -- we will never know because she never came back.
>
> But by the time she saw Dr. Rana, the way we say in oncology, "the cat was out of the bag." It was disseminated, nonresponsive to therapy. No patient with this cancer that is diagnosed in the metastatic condition survives.
>
> * * *

least one essential element of their wrongful death causes of action. There is no competent proof of causation. In fact, as a matter of law the essential causation element necessary to support the wrongful death claims is negated by the summary judgment evidence."

[3]Dr. Hancock treated Dunning for endometrial cancer and performed her hysterectomy in 2010.

Q. And if I understand correctly, even if on March the 28th[4] she had somehow gotten a message from Dr. Rana that she had to have a PET scan and that PET scan had been scheduled and she had gone to it on March the 28th, it would have made no difference in her survival?

A. Knowing what I know, looking at the entire picture from the beginning to the end, yeah, it didn't wouldn't make any difference.

Q. So her supposed failure to follow up or failure to comply with doctors' orders made no difference in her outcome in this case; is that true?

A. From the moment she saw Dr. Rana, no difference.

Thus, Appellees met their summary judgment burden of coming forward with summary judgment evidence negating an essential element of Appellants' wrongful death causes of action—causation. That is, Appellees proffered summary judgment evidence that Dunning suffered from metastatic cancer at the time Dr. Rana saw her and treated the basal cell carcinoma on her nose and that even if Dunning's metastatic cancer had been diagnosed and treated right then, she still would not have survived the terminal disease. *See Kramer*, 858 S.W.2d at 398 (holding that under Texas Wrongful Death Act there is no "liability for negligent treatment that decreases a patient's chance of avoiding death . . . in cases where the [death] probably would have occurred anyway"). The summary

---

[4]Dr. Rana's records establish that a nurse practitioner called Dunning on March 28, 2012, to remind her of the need for a follow-up PET scan; Mr. Dunning answered his wife's phone. The message was purportedly provided to him, and he purportedly responded that his wife would contact the office to schedule the test after she completed rehabilitation for an arm injury.

judgment burden then shifted to Appellants to raise a genuine issue of material fact on causation in their wrongful death claims.

To raise a genuine issue of material fact on causation, Appellants bore the burden of producing controverting expert testimony that in reasonable medical probability, i.e., a greater than 50% probability, Dunning would have survived her metastatic cancer if she had begun treatment immediately after the November 7, 2011 PET scan. *See Hawley*, 284 S.W.3d at 861 (explaining that in *Kramer*, the supreme court rejected approaches to loss of chance that would allow recovery without proof that the defendant's negligence caused more than a 50% loss of chance of avoiding the injuries above and beyond those that would have occurred anyway). Appellants argue that

> [t]his is not a case about a possibility of survival. Mrs. Dunning was likely to die at some point from her recurrent endometrial cancer. She was not, however, going to die on July 9, 2013. Mrs. Dunning had a greater than 50% chance of survival past the date of her death had her cancer been recognized and treated earlier than it was. . . . If it had been timely diagnosed and treated, Mrs. Dunning could have survived past July 2013, by months or years, to a reasonable medical probability.

Appellants point to the deposition testimony of their expert, Dr. Amer Karam, and the "Declaration in Amer Karam" attached to Appellants' summary judgment response as raising genuine issues of material fact sufficient to defeat Appellees' motion for partial summary judgment.

We have carefully reviewed the summary judgment evidence cited by Appellants. Viewing Dr. Karam's testimony in the light most favorable to

8

Appellants, he testified that in January 2011, there was more than a 50/50 chance that Dunning would have had a negative Pap smear. He testified that Dr. Rana's failure to observe the standard of care in his care for Dunning "delayed the diagnosis of a recurrence, which then impacted her chances of getting successfully treated and to control the recurrence, get her more life and less suffering." Dr. Karam's Declaration provides, in pertinent part:

6. The results of the PET/CT scan from November 7, 2011 should have been reported to the patient and should have resulted in immediate follow up and review by Dr. Rana. The standard of care required a more thorough investigation of the reported hyper metabolic lymphadenopathy with an image guided biopsy or short interval PET/CT scan within a few weeks to confirm or dismiss the very suspicious findings. Had this been done, the metastatic disease would have been confirmed, in my opinion, in early 2012 (January or February) and the substantial delay in the treatment and diagnosis of Patty Dunning would have been avoided.

7. Earlier treatment of Patty Dunning in the form or surgery, radiation, or chemotherapy, to a reasonable medical probability, would have prolonged her life, and obviated or greatly lessened most all of the suffering she underwent as a result of her metastatic disease and the fact that it could no longer be treated successfully by the time she was diagnosed in October 2012.

8. It is my opinion that Patty Dunning would have survived for several months, probably at least a year, and, with proper early treatment, up to two to three years on the date of her death had her current metastatic endometrial cancer been treated promptly as set forth above. This is based on the more limited nature of her disease when it was first noted and could have been more successfully controlled with a possible combination of surgery, radiation therapy and chemotherapy.

Viewing all of the summary judgment evidence in the light most favorable to Appellants, no evidence exists that but for Appellees' alleged medical

negligence Dunning would not have died from her metastatic cancer. That is, no evidence exists that in reasonable medical probability the medical negligence of Appellees (as opposed to preexisting metastatic cancer) deprived Dunning of a greater than 50% chance of surviving her cancer. *See, e.g.*, *Hawley*, 284 S.W.3d at 861 ("proof that a patient lost some chance of . . . surviving the cancer because of a defendant's negligence is not enough for recovery of damages") (emphasis removed); *Kramer*, 858 S.W.2d at 404 ("We therefore hold the Kramers are not entitled to recover under the Texas Wrongful Death Act for their claims of pecuniary losses, losses of companionship and society, and mental anguish sustained as a result of the Hospital's negligent deprivation of Ms. Kramer's less-than-even chance of survival [of her cancer]"); *Parrott*, 873 S.W.2d at 149 ("There is no evidence in the case before us to rebut the fact that Mrs. Parrott, in spite of the failure by the defendant doctors to properly diagnos[e] her terminal illness, would not have died had that illness been properly diagnosed."). Appellants' summary judgment evidence from Dr. Karam that Dunning could have lived longer and more pain-free but for the medical negligence of Appellees may be sufficient to raise genuine issues of material fact concerning damage elements recoverable in a survival action,[5] but such evidence does not raise a genuine issue of material fact concerning causation in a wrongful death action.

---

[5] *See, e.g.*, *Parrott*, 873 S.W.2d at 150–51 (explaining that *Kramer* does not foreclose a decedent's survival cause of action for damages resulting during the period between when the condition should have been diagnosed and was diagnosed).

*See Kramer*, 858 S.W.2d at 404 ("Under the Wrongful Death Act, liability may be predicated only on 'an injury that causes an individual's death.'"); *Parott*, 873 S.W.2d at 149 ("In Wrongful Death Act actions, the negligent conduct complained of must bring about the result, i.e., the death of the person through which those statutorily defined beneficiaries may seek redress. We find no evidence that the alleged negligent conduct of Drs. Caskey and Read deprived Mrs. Parrott of anything more than a less-than-even chance of survival."). Because the summary judgment evidence, when viewed in the light most favorable to Appellants and after indulging every reasonable inference in Appellants' favor, conclusively establishes that Dunning's death in reasonable medical probability was not caused by Appellees' medical negligence and that, accordingly, Appellees conclusively negated the causation element of Appellants' wrongful death claims, we hold that the trial court correctly granted summary judgment for Appellees. We overrule Appellants' three issues.

## VI. CONCLUSION

Having overruled Appellants' three issues, we affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: WALKER, MEIER, and FITZGERALD, JJ. (Senior Justice, Retired, Sitting by Assignment.

DELIVERED: November 17, 2016

11