**Opinion filed April 30, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-17-00104-CV

_____

## CHRISTINA JUAREZ BRIGHT, Appellant

## V.

## TRACEY SIMPSON, Appellee

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CV-11-10374**

## M E M O R A N D U M   O P I N I O N

Tracey Simpson sued Christina Juarez Bright to recover damages for injuries that she received as the result of a car wreck. After a jury trial, the trial court entered a judgment in favor of Simpson in accordance with the verdict of the jury. This appeal is from that judgment. We reverse and remand.

Bright testified that, as she drove to work on the morning that the collision occurred, she approached a familiar intersection. As she came up to the intersection, she noticed that the traffic light changed to yellow; she thought that she could safely

proceed through the intersection. Bright testified that she was traveling below the speed limit.

Simpson, however, testified that the traffic light was green when Simpson entered the intersection. The front of Bright's vehicle collided with the side of Simpson's vehicle, and the impact caused Simpson's vehicle to go into the adjacent lane of traffic where it collided with another vehicle. Simpson's vehicle finally came to rest in oncoming lanes of traffic on the other side of the intersection.

Almost two years after the collision occurred, Simpson sued Bright for damages allegedly suffered as a result of the collision. In her lawsuit, Simpson alleged that Bright's negligence and/or gross negligence caused Simpson's injuries, most of which were related to her back and leg.

The case went to trial before a jury about seven years after the date of the collision. The jury awarded the following damages to Simpson, for a total of $213,561.08:

- $50,000.00 for past physical pain and mental anguish
- $75,000.00 for future physical pain and mental anguish
- $25,000.00 for past physical impairment
- $40,000.00 for future physical impairment
- $23,561.08 for past medical expenses

After the jury returned its verdict, Bright filed a motion for judgment notwithstanding the verdict. In her motion, Bright claimed that Simpson did not present any expert medical testimony to support the jury's verdict that the collision caused Simpson's injuries. The trial court denied the motion.

Bright then filed a motion for new trial based on the absence of expert evidence to prove causation of Simpson's injuries. The trial court denied that motion also, and Bright filed this appeal.

Bright raises three issues on appeal. In her first issue on appeal, Bright maintains that, even with medical records, billing records, and Simpson's own testimony and that of Simpson's husband, the evidence is legally and factually insufficient to establish a causal nexus between the collision and Simpson's injuries. It is Bright's position that, under the facts of this case, it was necessary for Simpson to produce expert medical testimony to establish that her injuries were the result of the collision. In her second issue on appeal, Bright contends that the trial court erred when it denied her motion for JNOV or, alternatively, when it denied her motion for new trial. Bright asserts in her third issue that the damage award was excessive. There is no issue of fault argued in this appeal. We will first take up Bright's legal sufficiency complaint as to causation of Simpson's claimed injuries.

To recover damages in a personal injury case, a plaintiff must establish two causal factors: (1) a causal nexus between the conduct of the defendant and the event sued upon and (2) a causal nexus between that event and the plaintiff's injuries. *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex. 1984). This appeal concerns the second prong.

When we analyze a legal sufficiency challenge, we must determine whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We must review the evidence in the light most favorable to the challenged finding, credit any favorable evidence if a reasonable factfinder could, and disregard any contrary evidence unless a reasonable factfinder could not. *Id.* at 827. We may sustain a no-evidence or legal sufficiency challenge only when (1) the record discloses a complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810 (citing

3

Robert W. Calvert, *"No Evidence" & "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 362–63 (1960)).

In addition to the Simpsons' testimony, Simpson's attorney introduced medical records and billing affidavits into evidence at trial. The parties stipulated as to paid and incurred medical expenses in the amount of $23,561.08, but the stipulation did not include causation. The billing records were admitted only as a court exhibit and were not exhibited to the jury; they were admitted simply to allow the parties to stipulate to the paid and incurred amount of $23,561.08 in medical expenses. There was no other expert testimony offered at trial.

Simpson and her husband both testified at trial. Simpson testified to the jury about her injuries and about how, immediately after the collision, while she was still sitting in her vehicle, her back and leg hurt. Simpson explained that, over time, the pain extended to both legs, to her right foot, and to her tailbone. Simpson testified that none of her injuries existed prior to the collision.

Both Simpson and her husband testified as to Simpson's limitations and as to things that they did together before the collision that they could no longer do. Simpson testified that she is unable to do many of the tasks and activities she once could. She has to spread out basic housework and cannot vacuum as often as she would prefer. She now works one less day per week in order to get "a head start [on housework] and do a little bit each day" because, otherwise, "the pain would just be excruciating" and her sleep would suffer as a result. Simpson prefers to stand when possible, because of the pain she experiences when sitting. Her desk at work now has shelving to make it counter-height for her because she stands throughout the workday. Simpson and her husband's routine before the accident involved weekend road trips; after the accident, they do not travel as much due to the discomfort Simpson experiences when she sits in a car. Her ability to do many things she once enjoyed is limited.

Simpson also attended physical therapy sessions. Simpson testified about the various physical therapies that she underwent with different therapists. Records related to those sessions include notes that Simpson had back pain after a motor vehicle accident in November 2009.

On cross-examination, Bright's counsel questioned Simpson about alleged discrepancies between her testimony and the medical records. The medical records contain a March 2010 notation by one of Simpson's doctors that Simpson was "asymptomatic" and "doing quite well." The medical records also reflect that Simpson's injuries had resolved. Simpson testified that she disagreed with the doctor's characterization that she did not have symptoms; she said that she did not remember a time in early 2010 when she did not have pain. Simpson also testified as to her pain the day after the collision. She was not able to move without hurting; Simpson's husband had to help her dress and perform daily functions. She could not work for two weeks after the date of the collision. Simpson testified that her condition improved in some areas, but not in others.

The medical records also reflect that Simpson received no medical treatment between the dates of August 2013 and January 2016. Simpson explained that during that time she was able to tolerate her pain.

Additionally, in support of her argument that expert medical testimony was needed in this case, Bright refers to a form that Simpson completed in April 2010 for Brownwood Regional Rehab & Fitness Zone. Simpson did not list any back problems under the "Prior Medical History" section. Further, Simpson indicated on the form that she exercised regularly on the treadmill and occasionally lifted weights. When questioned about the contents of the rehab form, Simpson testified that the reference was to what she did prior to the accident.

Simpson also indicated on the form that she could perform the same pre-accident exercise less than six months after the collision. Simpson testified that she

thought the therapist "was wanting to know what I used to do – my level of activity" prior to the accident, "or what my goal might have been, because I definitely have not lifted a weight since."

In the medical records, reference is made to degenerative issues that involved Simpson's back. Bright maintains that expert medical testimony is necessary to, among other things, explain the effect that those degenerative issues have upon Simpson's condition, as opposed to their having a causal nexus to the collision. Bright argues that the answer to that question is beyond the common experience of a layperson and that Simpson needed a medical expert to testify in order to establish a causal nexus between the accident and her injuries.

Generally, "expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors." *Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007). A plaintiff must show, by competent evidence, the causal connection between the event sued upon and the plaintiff's injuries. *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 732 (Tex. 1984). Under certain circumstances, a causal connection between an event and physical conditions may be supported by testimony other than expert testimony and is, therefore, competent evidence of causation. *Guevara*, 247 S.W.3d at 666. In *Morgan*, the court wrote, "Generally, lay testimony establishing a sequence of events which provides a strong, logically traceable connection between the event and the condition is sufficient proof of causation." *Morgan*, 675 S.W.2d at 733. That type of evidence could be enough to support a finding of a causal nexus between a vehicle collision and basic physical conditions that are within the common knowledge and experience of laypersons; did not exist before the accident; appeared after and close in time to the accident; and are conditions that laypersons would understand, from their common knowledge and experience, as being the result of a vehicle collision. *Guevara*, 247 S.W.3d at 667.

6

Simpson's injuries mainly comprise subjective complaints of back pain and leg pain. The Simpsons' testimony might be competent evidence that would be within the common knowledge and experience of laypersons as to Simpson's condition immediately after the collision. However, as far as proof of causation beyond that, the two and one-half year gap in medical treatment, the notations that her condition had resolved, the notation that she was asymptomatic, the observation of the degenerative condition of her back, and the subjective nature of Simpson's soft tissue condition remove this case from those limited instances in which nonexpert testimony is sufficient to establish causation. The lay testimony does not establish "a sequence of events which provides a strong, logically traceable connection between the event and the condition." *Morgan*, 675 S.W.2d at 733; *see Kelley v. Aldine Indep. Sch. Dist.*, No. 14-15-00899-CV, 2017 WL 421980, at *3 (Tex. App.—Houston [14th Dist.] Jan. 31, 2017, pet. denied) (mem. op.) (disc herniations, cervical radiculitis, and lumbar radiculopathy are neither common nor basic, and expert medical testimony is needed to establish causation). Without expert medical testimony, the evidence is legally insufficient to support a finding that the collision caused all of Simpson's damages. We sustain Bright's first issue on appeal.

Because we have sustained Bright's first issue on appeal, we need not address her remaining issues on appeal.

The normal course of action for us to take when we find that evidence is legally insufficient would be to render judgment, but here, there is sufficient competent evidence to support at least some damages. We believe that the proper course of action under this record would be to reverse the judgment of the trial court and remand for a new trial. *See Guevara*, 247 S.W.3d at 670.

We reverse the judgment of the trial court and remand the cause to the trial court for a new trial.


JIM R. WRIGHT

SENIOR CHIEF JUSTICE


April 30, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.