**AFFIRM and Opinion Filed July 1, 2024**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-23-00236-CV

**JESUS JIMENEZ ESCAMILLA, JR., Appellant**
**V.**
**GABRIELA ESTRADA, Appellee**

**On Appeal from the County Court at Law No. 5**
**Dallas County, Texas**
**Trial Court Cause No. CC-19-01718-E**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Nowell, and Carlyle
Opinion by Justice Nowell

This appeal stems from a car accident in which a jury awarded appellee

Gabriella Estrada $678,908.11 in damages. The trial court signed a final judgment

totaling $706,313.78. On appeal, appellant Jesus Jimenez Escamilla, Jr. challenges

the trial court's "exclusion"[1] of his biomechanical engineering expert and the

---

[1] Although Escamilla presents his issue as the trial court excluding his expert, the record does not support this contention. The trial court sua sponte stopped the expert's testimony when it determined it was not relevant, but the court did not strike the expert or tell the jury to disregard his testimony. Instead, defense counsel decided during the charge conference to have the court instruct the jury to disregard the expert's testimony.

sufficiency of the evidence to support the award of past and future medical expenses. We affirm.

## Background

On October 11, 2017, Escamilla rear-ended Estrada at an intersection in Dallas, Texas. Escamilla was driving a Nissan Titan pickup truck and Estrada was driving a Chevrolet Camaro. Escamilla described feeling a "soft bump" when he hit Estrada. Estrada indicated she was not injured and did not appear to be in pain. Estrada did not seek medical care at that time; however, after she got home, she noticed pain in her neck and back. Advil did not alleviate the pain.

Two weeks later, she went to the hospital. X-rays revealed spondylosis and degeneration but no fractures. The emergency room doctor prescribed pain medication, and she started physical therapy that temporarily relieved the pain.

On January 3, 2018, she saw Dr. Zeshan Chaudhry for a follow up appointment. Estrada complained of "muscle tightness, restricted motion, and aching pain throughout the neck and lower back with associated sharp shooting pain and paresthesias." She described her neck pain as a ten out of ten, and her lower back pain as a three out of ten. The constant pain interfered with daily living, working, and sleeping, but therapy, resting, stretching, and taking analgesics provided temporary relief. Dr. Chaudhry's report stated her injuries "were either caused or worsened by the accident, as patient was free of these injuries and symptoms prior to the accident."

–2–

After completing physical therapy, Estrada was referred to Dr. Christopher Chun, a double board-certified doctor in anesthesiology and pain management. An MRI revealed cervical radiculopathy with C4 through C7 cervical disk herniation. Dr. Chun recommended surgical steroid spine injections. He performed the first surgical steroid spine injection on February 2, 2018, which allowed Estrada to temporarily return to some activities without pain, but then the "pulsating, sharp pain" slowly returned. She received a second steroid injection on March 23, 2018.

On March 18, 2019, Estrada filed a negligence suit against Escamilla alleging his conduct was the proximate cause of her injuries. The parties entered into a Rule 11 Agreement in which Escamilla stipulated to causing the accident, and the lawsuit proceeded to a jury trial on causation of Estrada's injuries and damages. Escamilla testified and described the accident as a "soft bump." Estrada testified about her pain, medical treatment, and how the accident negatively impacted her life because she no longer enjoyed family activities. Although her back pain was better, she still experienced neck pain.

Estrada called two expert witnesses, Dr. Chun and Dr. Thomas Garzillo, a certified life planner and doctor of chiropractic. Dr. Garzillo detailed the necessity and expense of possible treatments needed for the rest of Estrada's life. Dr. Garzillo used a "very conservative" estimate that she would need eight to ten doctor visits a year with intermittent diagnostic imaging. He provided an estimated range of future medical expenses of $1,962 to $4,129 a year but believed it would be on the higher

end because of her four herniated disks. His estimate did not take into account any future steroid injections, which each cost $8,500.

Escamilla designated one expert witness, Adelino Yung, a biomechanical engineer and accident reconstructionist hired to determine the impact of the car crash using crash test studies and explain the results to the jury in laymen's terms. He reviewed a deposition transcript, photographs, some medical records, and the repair estimate in formulating his opinion.

Estrada called Yung as an adverse witness during her case-in-chief. Yung explained that depending on the delta-Vs (change in velocity), accelerations, and durations, a collision like Estrada's could be almost identical to a bumper car impact at an amusement park. He could not, however, determine the rate of speed for either car during the crash, but opined "the laws of physics will dictate how fast that [5,300 pound truck] can be traveling." He conceded he could not base any opinions as to what caused Estrada's injuries upon reasonable medical probability. He further admitted a Texas Lawyer article wrote his methods were "junk science," and courts have excluded him as an expert witness many times.

During examination by Escamilla's counsel, Yung explained a biomechanical engineer deals with forces acting on the human body. He testified he was not a doctor or hired as a medical expert; instead, he was hired to provide expertise and knowledge regarding accident reconstruction and the physics of biomechanics.

–4–

When defense counsel attempted to admit some photographs, the jury was dismissed and proceedings continued. During discussions outside the jury's presence, Estrada's counsel asked, "Just as a path forward, because I'm just kind of curious . . . where are we headed with this guy?" because Yung could not testify to any of the questions before the jury concerning, in part, causation, medical treatment, costs of treatment, and future impairment. The trial court likewise indicated its skepticism for Yung's testimony because "if liability is not an issue," then what was the purpose of this testimony. Defense counsel responded that as an accident reconstructionist and biomechanical engineer, he would provide evidence of the severity of the accident.

The trial court briefly recessed to review Yung's report, the rules, and applicable case law. The trial court subsequently determined Jung's testimony would not "assist the jury in making a determination of damages or causation." On its own motion, "I won't allow him to testify any further." Escamilla's counsel objected and asked to provide an offer of proof. The trial court stated that counsel could do so at a later time. The jury returned and without any reference to Yung, the parties closed and rested their cases.

During the charge conference, Estrada said she wanted to use a slide in closing argument that included information from Yung's testimony. Escamilla objected because Yung's testimony was not complete, and it was highly prejudicial to allow Estrada to reference the testimony when he did not have the opportunity to

completely question Yung. The court determined they could either argue about Yung's testimony in closing, or the court could instruct the jury to disregard it. Defense counsel asked the court to "address the issue with the jury to inform the jury to disregard the testimony or the partial testimony, more accurately, of Mr. Yung." Before reading the charge to the jury, the trial court instructed it to disregard Yung's testimony "in its totality" because it would not assist any decision-making in the case.

After the jury began deliberations, Escamilla made his offer of proof. He presented Yung's expert report, and the court accepted it as "a summation of what the expert would have testified to in pleading form."

The jury found the accident caused Estrada's injuries and awarded $18,820 for past physical pain, $18,820 for past mental anguish, $9,410 for past physical impairment, $45,991.11 for past medical expenses, $69,400 for future physical pain, $69,400 for future mental anguish, $69,400 for future physical impairment, and $387,077 for future medical expenses. On December 12, 2022, the trial court signed a final judgment totaling $706,313.78. Escamilla filed several post-judgment motions, which the trial court denied. This appeal followed.

## Expert Testimony

In his first issue, Escamilla argues the trial court abused its discretion by excluding Yung's testimony regarding the severity of the accident's impact because it would have assisted the jury in understanding the evidence and determining

–6–

causation of Estrada's injuries. Estrada contends the trial court properly concluded Yung's opinion was not relevant to any jury issues because he could not render any causation opinions based upon reasonable medical probability.

We review the decision to exclude expert testimony for an abuse of discretion.[2] *See K–Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000). The test for abuse of discretion is whether the trial court acted without any guiding rules or principles. *Nabors Well Servs., Ltd. v. Romero*, 508 S.W.3d 512, 529 (Tex. App.—El Paso 2016, pet. denied). With regard to experts, the guiding rules and principles are found in rule of evidence 702 which requires an expert be (1) qualified, (2) his opinion be relevant, and (3) the opinion be based on a reliable foundation. TEX. R. EVID. 702; *see also Nabors*, 508 S.W.3d at 529.

Whether Yung's opinion was relevant is the only element at issue on appeal. Expert opinion testimony is relevant when it is "sufficiently tied to the facts of the case [so] that it will aid the jury in resolving a factual dispute." *Nabors*, 508 S.W.3d at 529 (quoting *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995)). Simply put, irrelevant evidence is of no assistance to the jury. *Id.*

Biomechanical engineers are often designated as experts when a plaintiff or defendant wants to prove whether a particular kind of injury might or might not

---

[2] Although Escamilla presents his issue as the trial court excluding his expert, as explained in footnote 1, the trial court sua sponte stopped Yung's testimony when it determined it was not relevant. The court did not strike Yung, but instead defense counsel later chose to have the jury instructed to disregard his partial testimony. Regardless of the unique procedural posture of this case, we nonetheless consider the issue for an abuse of discretion.

result from an auto collision at a particular speed. *Nabors*, 508 S.W.3d at 530 ("Biomechanics is the study of the application or relation of the laws of mechanics to the body."). In surveying how other courts have viewed this issue, the majority have recognized that a properly qualified biomechanical expert may express an opinion as to how forces act on the human body during a collision and the type of injuries that can be sustained from those forces. *Id.* at 532–33. Thus, when a biomechanical expert meets the requirements of rule 702, he may express opinions that will assist the jury in deciding injury causation questions. *Id.* at 534. To the extent Estrada argues otherwise, we disagree, as Texas law allows a non-medical doctor to testify as to causation in some instances. *See, e.g.*, *id.* (concluding that "Texas law does not per se disqualify a properly qualified biomechanical expert, who otherwise meets the requirements of Rule 702, from expressing opinions that will assist the jury in deciding injury causation questions"); *see also Rodriguez v. United States*, No. 2:19-CV-217, 2022 WL 2309892, at *1 (S.D. Tex. Feb. 17, 2022) (citing *Nabors*).

Escamilla relies on several cases in which courts have allowed biomechanical expert testimony; however, each one is distinguishable from the facts here. In *Nabors*, the trial court granted a pretrial motion to exclude a biomedicine expert's testimony regarding ejection scenarios, with and without a seatbelt, and "injury causation" in a roll-over car accident because the opinion would not "assist the trier of fact." 508 S.W.3d at 527. On appeal, the court analyzed the expert's

methodology and described how he referenced many vehicular accident studies in which the failure to wear a seat belt generally resulted in ejection in serious rollover accidents, and ejection generally led to more serious injuries or death. *Id.* at 536. The expert then described how some accident victims fit the injury patterns in the studies. *Id.* For example, one victim suffered significant injuries to her torso, and the expert discussed a study finding a similar increase in the incidence of AIS–3 (Abbreviated Injury Scale) or higher torso injuries for unrestrained versus restrained occupants in an accident. *Id.* at 541–42. Thus, the appellate court concluded the trial court abused its discretion by excluding some of the expert's opinions because the testimony could have assisted the jury in deciding if the victims' injuries were more serious because they were unrestrained. *Id.* However, the appellate court concluded the trial court did not abuse its discretion by excluding causation testimony to other victims when "he could not tie the specifics of their situation to the studies in general." *Id.* at 543.

Similarly, in *Perez v. Roman*, the district court concluded a biomechanical expert could testify regarding the biomechanics at play in an alleged automobile accident and explain whether the plaintiff's alleged injuries were consistent with the forces generated by the accident. No. 1:21-CV-187, 2023 WL 3247551, at *3 (S.D. Tex. Apr. 26, 2023). Although some of his conclusions related solely to the physical forces the accident generated, other conclusions addressed the connection between the forces in the accident and the alleged injuries. *Id.* For example, he concluded

–9–

that "acute dis[k] herniations would not be consistent with the dynamics of the Ford in the subject accident" and that "peak head accelerations experienced by the occupants of the Ford would have been below any metric associated with traumatic brain injury or concussion." *Id.* Because his opinions did not attempt to explain the cause of the injuries, but merely indicated whether the injuries would be consistent with the physical forces generated by the accident, the district court allowed the opinions. *Id.*; *see also Herrera v. Werner Enters., Inc.*, No. SA-14-CV-385-XR, 2015 WL 12670443, at *4 (W.D. Tex. Sept. 28, 2015) (allowing biomechanical engineer testimony when expert relied on studies and articles to explain his conclusions about types of injuries that could occur as a result of accidents involving a similar amount of force).

Similar to the experts in *Nabors* and *Perez*, Yung's expert report provided several opinions regarding the potential physical forces generated by the accident. For example:

- The worst-case scenario relative impact speed of Escamilla's truck was less than 9 to 10 miles per hours.

- The impact caused the velocity of Escamilla's truck to decrease by 5 to 5.5 miles per hour and Estrada's car to increase by 7.5 to 8.5 miles per hour.

- Considering the biomechanical forces, speeds, and accelerations, this was a minor rear-end impact for Estrada.

- In such a minor rear-end impact, the relative movement of the body struck, if any, would initially be rearward towards the point of impact; followed by compression of the seatback cushion and the body rebounding towards the front of the vehicle. All significant movement, if any, would be

–10–

isolated to front-to-rear movements with no twisting and/or lateral movements within the vehicle.

- He equated the severity of the impact to that of an impact imparted to occupants of bumper cars in an amusement park ride.

- He also compared the severity of the impact to that of a person slipping from a height ranging between two to three feet and hitting the ground, but the impact would be more severe because a person would be hitting a hard surface and not a cushioned seatback.

While these opinions explain the possible forces from the impact, glaringly missing is any comparison of whether Estrada's injuries were consistent with the physical forces generated by the accident. Unlike the experts in *Nabors* and *Perez*, nothing in Yung's expert report or brief trial testimony indicates the type of injuries one might sustain from the impact of a bumper car at an amusement park or a person falling while walking. Thus, while courts routinely allow biomechanical experts to offer opinions in car accident cases, the trial court did not abuse its discretion in this case. Without any evidence of whether Estrada's neck and back injuries would be consistent with the physical forces created by the accident, Yung's opinion was not relevant to the jury's determination of causation and damages. *See, e.g.*, *Herrera*, 2015 WL 12670443, at 3 (allowing biomechanical expert to testify to forces in the accident, damages to the vehicle, injury causation forces, and *their hypothetical effect on the human body*); *see also Nabors*, 508 S.W.3d at 529 (explaining expert testimony is relevant when it is "sufficiently tied to the facts of the case [so] that it will aid the jury in resolving a factual dispute"). We overrule Escamilla's first issue.

## Sufficiency of Past and Future Medical Expenses

In his second issue, Escamilla argues the evidence was legally and factually insufficient to support past and future medical expenses because neither expert explained "how" or "why" the minor accident caused the complex soft-tissue injuries.[3] Estrada responds her experts, along with her testimony, provided sufficient evidence supporting causation and the damages award.

An appellant challenging the legal sufficiency of the evidence on an issue on which he did not have the burden of proof must demonstrate no evidence supports the adverse finding. *Kansas City S. Ry. Co. v. Horton*, 666 S.W.3d 1, 15 (Tex. App.—Dallas 2021) (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983), *reversed on other grounds on reh'g*, No. 21-0769, 2024 WL 3210468 (Tex. June 28, 2024)). We consider the evidence in the light most favorable to the verdict and "credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 808 (Tex. 2005). If more than a scintilla of evidence supports the finding, the no evidence challenge fails. *Kansas City S. Ry. Co.*, 666 S.W.3d at 15.

In contrast, a factual sufficiency complaint challenging an adverse finding on an issue on which the appellant did not have the burden of proof requires a demonstration that insufficient evidence supports the adverse finding. *Id.* We

---

[3] Escamilla does not assert either doctor was unqualified to testify as an expert or that their testimony was unreliable.

consider and weigh all of the evidence and set aside the verdict only if the evidence is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Id.*

"[W]hen an accident victim seeks to recover medical expenses, she must show both 'what all the conditions were' that generated the expenses and 'that all the conditions were caused by the accident.'" *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 162 (Tex. 2015) (quoting *Guevara v. Ferrer*, 247 S.W.3d 662, 669 (Tex. 2007)). Expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors. *Id.* "[I]f evidence presents other plausible causes of the injury or condition that could be negated, the proponent of the testimony must offer evidence excluding those causes with reasonable certainty." *Id.* (quoting *Transcontinental Ins. Co. v. Crump*, 330 S.W.3d 211, 218 (Tex. 2010) (internal punctuation omitted)). When expert testimony is required, lay evidence supporting liability is legally insufficient. *City of Keller*, 168 S.W.3d at 812.

Although expert testimony is usually required to prove causation as to medical conditions, the supreme court has stated that lay testimony may be sufficient "in limited circumstances where both the occurrence and conditions complained of are such that the general experience and common sense of laypersons are sufficient to evaluate the conditions and whether they were probably caused by the occurrence." *Guevara*, 247 S.W.3d at 668; *McGee v. Tatum*, No. 05-21-00303-CV, 2022 WL

–13–

17248174, at *5 (Tex. App.—Dallas Nov. 28, 2022, no pet.) (mem. op.). Thus, lay testimony may establish causation "only in those cases in which general experience and common sense enable a layperson to determine the causal relationship with reasonable probability. *McGee*, 2022 WL 17248174, at *5. Temporal proximity alone, however, is not sufficient.

Here, Estrada provided the expert testimony of Dr. Chun and Dr. Garzillo, along with her own testimony about her pain following the accident. Estrada admitted she suffered a previous back injury over twenty years ago in a different car wreck; however, she did not have any neck or back pain immediately prior to *this* accident. After the accident, she did not feel well and as more time passed, she noticed aches in her neck. Two weeks later, after the pain continued and Advil did not alleviate it, she went to the hospital where she subsequently received pain medication and a referral for physical therapy.

"Evidence of an event followed closely by manifestation of or treatment for conditions which did not appear before the event raises suspicion that the event at issue caused the conditions." *Rangel v. Ledgister*, No. 02-23-00319-CV, 2024 WL 1670894, at *9 (Tex. App.—Fort Worth Apr. 18, 2024, no pet.) (mem. op.) (quoting *Guevara*, 247 S.W.3d at 668). While this suspicion alone is not legally sufficient to support a finding of causation, when combined with other causation evidence that conditions exhibited themselves or were diagnosed shortly after an event—such as the testimony of other experts—it may be probative in determining causation. *Id.*

–14–

Thus, although Estrada's temporal proximity testimony alone was not sufficient to establish the accident caused her soft-tissue injuries, she also provided the testimony of two experts. *Id.*; *see also, e.g.*, *Silva v. Diaz*, No. 05-20-00443-CV, 2022 WL 3500008, at *10 (Tex. App.—Dallas Aug. 18, 2022, no pet.) (mem. op.) (concluding lay witness testimony of pain following accident, along with expert testimony concluding injuries were caused by the collision, was sufficient to support award of past and future medical expenses).

Dr. Chun testified all of his opinions were based on reasonable medical probability and accepted methodologies in his particular field of medicine. He described performing a differential diagnosis, meaning he reviewed different symptoms with possible diagnoses and then compared the different causes for the symptoms. Here, he reviewed Dr. Chaudhry's January 3, 2018 medical report in which he noted Estrada's injuries "were either caused or worsened by the accident, as patient was free of these injuries and symptoms prior to the accident." There were no medical records or imaging prior to the accident indicating a history of neck pain or disk herniations. Dr. Chun testified Estrada's MRI did not indicate she had disk degeneration or disk disease. He explained that when a person is not suffering back or neck pain symptoms, then it is more likely than not the person is not suffering from a herniated disk. However, a person who has never experienced prior neck pain requiring a doctor's care or an MRI and then suffers a trauma and feels pain, "I

–15–

would say in all medical probability those herniations were caused by the trauma we're here for."

In performing the differential diagnosis, Dr. Chun also considered Estrada's ER notes in which X-rays revealed some spondylosis and degeneration. He explained it is not unusual for a person in her forties to have some arthritis and breakdown of the spine; however, X-rays would not show herniated disks because X-rays do not show disks. He also testified "a big important part" was any "history of trauma," which was missing from this case. He testified, unequivocally, that based on his review of the records and the differential diagnosis, the most probable cause of the injuries outlined in the MRI was the car accident on October 11, 2017. "So, if we are talking about medical probability, a trauma happened, caused her to receive all of this treatment and get imaging done." Finally, he explained there was nothing unusual or suspicious about Estrada waiting to seek treatment rather than immediately going to the emergency room post-accident. People often try and "tough it out," and decide to seek care when the pain persists.

Similarly, Dr. Garzillo testified he was an expert in both certified lifecare planning and a doctor of chiropractic. He explained a certified lifecare planner uses a methodology to calculate future medical expenses based on certain criteria. He provided the future medical care plan for Estrada, which identified and included the medical cost projection for her medical expenses. He used published research to predict what will happen to an individual with the same injury, disease, or condition,

based on what has happened to other individuals with the same injury, disease, or condition.

Here, he reviewed Estrada's medical records and referenced independent sources that best aligned with her diagnosis. He emphasized his analysis was limited to only those costs for injuries found by healthcare providers after the car accident. He opined that, based on Estrada's injury and the studies, she would suffer a post-traumatic degenerative cascade as soon as five years following the injury. Her spine injury was permanent, meaning it would never return to normal through treatment or the natural healing process.

He used a "very conservative" estimate that she would need eight to ten doctor visits a year with intermittent diagnostic imaging. He estimated a range of future medical expenses of $1,962 to $4,129 a year but believed it would be on the higher end because of the four herniated disks. His estimate did not take into account any future steroid injections, which cost $8,500 each. If the jury used Estrada's projected life expectancy of eighty-three, then the range for future medical expenses would be $74,556 to $156,902. If the jury used seventy-two years of age, thereby taking into account typical aging, then the range would be $52,974 to $111,483. Thus, Dr. Garzillo provided medical expense ranges taking into account either age.

The jury ultimately awarded $387,077 for future medical expenses, which appears to be based on the jury's calculation allowing for thirty-eight years of conservative care ($156,902) and approximately twenty-seven years of steroid shots

($230,175).  Escamilla provided no evidence to the contrary and did not challenge the reasonableness or necessity of these expenses.

Based on the evidence of the temporal proximity of the onset of Estrada's symptoms—the neck pain occurring after the accident—together with Dr. Chun's and Dr. Garzillo's testimony and Estrada's post-accident MRI results and examinations, the jury could have reasonably inferred that her past and future medical expenses were proximately caused by the October 11, 2017 motor vehicle collision.  *See Rangel*, 2024 WL 1670894, at *9; *see also Hulsey v. Attalla*, No. 01-18-00180-CV, 2019 WL 3484082, at *8 (Tex. App.—Houston [1st Dist.] Aug. 1, 2019, no pet.) (mem. op.) ("Based on the evidence of the temporal proximity of the onset of Attalla's symptoms, i.e., the debilitating pain in his back that began after the collision, together with the testimony of Drs. Cotler and Bishai about the pre-and post-collision MRI results . . . the jury could have reasonably inferred that Attalla's injuries were proximately caused by the collision . . . .").  Moreover, there was no evidence of any "other plausible causes of the injury or condition that could be negated," as Escamilla presented no expert testimony to the contrary.  *Rangel*, 2024 WL 1670894, at *9.

Considering the evidence in the light most favorable to the verdict, we conclude the jury could have found the accident caused Escamilla's injuries.  *City of Keller*, 168 S.W.3d at 808.  Furthermore, considering all the evidence, we conclude such a finding is not so contrary to the overwhelming weight of the evidence that the

–18–

verdict is clearly wrong and unjust. *Kansas City S. Ry. Co.*, 666 S.W.3d at 15. Accordingly, we overrule Escamilla's second issue.

In his third issue, Escamilla "suggests a substantial remitter" of the award if we conclude some evidence supports the award of past and future medical expenses. We reject his invitation. A court of appeals may suggest a remittitur when there is insufficient evidence to support the full amount of damages awarded but sufficient evidence to support a lesser award. *Savoy v. Nat'l Collegiate Student Loan Tr. 2005- 3*, 557 S.W.3d 825, 840 (Tex. App.—Houston [1st Dist.] 2018, no pet.); TEX. R. APP. P. 46.3. Escamilla has not challenged the reasonableness or necessity of the award or explained how the evidence is insufficient to support the full amount of damages. Moreover, the jury's award of damages falls within the range provided by the expert testimony. *See Examination Mgmt. Servs., Inc. v. Kersh Risk Mgmt.*, Inc., 367 S.W.3d 835, 844 (Tex. App.—Dallas 2012, no pet.) (stating jury has broad discretion to award damages within the range of evidence presented at trial, so long as a rational basis exists for its calculation). His third issue is overruled.

## Conclusion

We affirm the trial court's judgment.

/Erin A. Nowell/
_____
ERIN A. NOWELL
JUSTICE

230236F.P05

–19–



# Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

JESUS JIMENEZ ESCAMILLA, JR., Appellant

No. 05-23-00236-CV     V.

GABRIELA ESTRADA, Appellee

On Appeal from the County Court at Law No. 5, Dallas County, Texas
Trial Court Cause No. CC-19-01718-E.
Opinion delivered by Justice Nowell. Justices Partida-Kipness and Carlyle participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee GABRIELA ESTRADA recover her costs of this appeal from appellant JESUS JIMENEZ ESCAMILLA, JR.

Judgment entered July 1, 2024.